# EXHIBIT 2



ALABAMA
DEPARTMENT OF FORENSIC SCIENCES

991 WIRE ROAD
AUBURN, ALABAMA 36830
(334) 887-7001

P.O. BOX 3510
AUBURN, ALABAMA 36831-3510
FACSIMILE (334) 887-7531

July 26, 2004

ROSIE L. CLIATT
P.O. BOX 313
HURTSBORO, ALABAMA 36860

Re:    01A-03MM00255
Dontovious Lamar Cliatt, subject

I, F. Taylor Noggle Jr., Director, hereby certify that the attached is a true and
complete copy of the report(s) of our findings pertaining to the above case
which is on file in my custody in the Alabama Department of Forensic
Sciences, Auburn, Alabama, and that I am the legal custodian of said report(s).
I further certify that it was in the regular course of business of said
Department for such report(s) to be made at the time of the events, transactions
or occurrences to which they refer or within a reasonable time thereafter.

F. Taylor Noggle Jr., Director
Legal Custodian of Records

Sworn to and subscribed before
me this 26ᵗʰ day of
July 2004

Notary Public



ALABAMA
# DEPARTMENT OF FORENSIC SCIENCES

991 WIRE ROAD
AUBURN, ALABAMA 36830
(334) 887-7001

P.O. BOX 3510
AUBURN, ALABAMA 36831-3510
FACSIMILE (334) 887-7531

**July 26, 2004**

**ROSIE L. CLIATT**
**P.O. BOX 313**
**HURTSBORO, ALABAMA 36860**

Re:    01A-03MM00255
        Dontovious Lamar Cliatt, subject

I, F. Taylor Noggle Jr., Director, hereby certify that the attached is a true and
complete copy of the report(s) of our findings pertaining to the above case
which is on file in my custody in the Alabama Department of Forensic
Sciences, Auburn, Alabama, and that I am the legal custodian of said report(s).
I further certify that it was in the regular course of business of said
Department for such report(s) to be made at the time of the events, transactions
or occurrences to which they refer or within a reasonable time thereafter.

F. Taylor Noggle Jr., Director
Legal Custodian of Records

Sworn to and subscribed before
me this 26th day of
July 2004

Notary Public

NATIONAL MEDICAL SERVICES                                    CONFIDENTIAL Analysis Report
3701 Welsh Rd, PO Box 433A, Willow Grove, PA 19090-0437
(215)657-4900  Fax: (215)657-2972
e-mail: nms@nmslab.com                                                          Page     1
ROBERT A. MIDDLEBERG, PhD, DABFT, DABCC, Laboratory Director

                                                            Control # 30117534

                              Date Received: 03/10/04        Name: CLIATT,DONTOVIOUS

20107                         Date Reported: 05/27/04        I.D.: 03MM00255

ALABAMA DEPT. OF FORENSIC SCIENCES                          SPECIMEN COLLECTION
JACK KALIN-BIRM. DIV.         Report Status: ** FINAL REPORT **   Date: Not Provided
1001 SOUTH 13TH STREET                                      Time: Not Provided          268956   8
BIRMINGHAM      AL US     35205

| Analyte | Specimen | Results | Units | Rep.Limit | Reference Data/Comments |
|---------|----------|---------|-------|-----------|-------------------------|
| | | | 8095  RAPID TOX PANEL II, BLOOD | | |
| OPIATES (CROSS REACTIVES) | BLOOD | NONE DETECTED | NG/ML | 20 | |
| COCAINE/METABOLITES (CROSS REACTIVES) | BLOOD | NONE DETECTED | NG/ML | 20 | |
| BENZODIAZEPINES (CROSS REACTIVES) | BLOOD | NONE DETECTED | NG/ML | 100 | |
| CANNABINOIDS (CROSS REACTIVES) | BLOOD | NONE DETECTED | NG/ML | 10 | |
| AMPHETAMINES (CROSS REACTIVES) | BLOOD | NONE DETECTED | NG/ML | 20 | |
| BARBITURATES (CROSS REACTIVES) | BLOOD | NONE DETECTED | NG/ML | 40 | |
| METHADONE (CROSS REACTIVES) | BLOOD | NONE DETECTED | NG/ML | 25 | |
| PHENCYCLIDINE (CROSS REACTIVES) | BLOOD | NONE DETECTED | NG/ML | 10 | |
| PROPOXYPHENE (CROSS REACTIVES) | BLOOD | NONE DETECTED | NG/ML | 50 | ANALYSIS BY ENZYME-LINKED IMMUNOSORBENT ASSAY (ELISA). |
| ETHANOL (ETHYL ALCOHOL) | BLOOD | 0 | G % | 0.02 | |
| METHANOL (METHYL ALCOHOL) | BLOOD | NONE DETECTED | MG/DL | 10 | |
| ISOPROPANOL (ISOPROPYL ALCOHOL) | BLOOD | NONE DETECTED | MG/DL | 10 | |
| ACETONE | BLOOD | NONE DETECTED | MG/DL | 10 | ANALYSIS BY GAS CHROMATOGRAPHY (GC). |
| SALICYLATES | BLOOD | NONE DETECTED | MCG/ML | 50 | |

(Additional Work on Report)

NATIONAL MEDICAL SERVICES
3701 Welsh Rd, PO Box 433A, Willow Grove, PA 19090-0437
(215)657-4900  Fax: (215)657-2972
e-mail: nms@nmslab.com
ROBERT A. MIDDLEBERG, PhD, DABFT, DABCC, Laboratory Director

CONFIDENTIAL Analysis Report

Page    2

20107

Date Received: 03/10/04

Date Reported: 05/27/04

Report Status: ** FINAL REPORT **

ALABAMA DEPT. OF FORENSIC SCIENCES
JACK KALIN-BIRM. DIV.
1001 SOUTH 13TH STREET
BIRMINGHAM     AL US     35205

Control # 30117534

Name: CLIATT,DONTOVIOUS

I.D.: 03MM00255

SPECIMEN COLLECTION
Date: Not Provided
Time: Not Provided          268956   8

| Analyte | Specimen | Results | Units | Rep.Limit | Reference Data/Comments |
|---------|----------|---------|-------|-----------|------------------------|
| ACETAMINOPHEN (TYLENOL) | BLOOD | NONE DETECTED | MCG/ML | 15 | ANALGESIC RANGE: 20 TO 100 MCG/ML. ANTI-INFLAMMATORY RANGE: 150 TO 300 MCG/ML. TOXIC: GREATER THAN 300 MCG/ML. ANALYSIS BY ENZYME-LINKED IMMUNOSORBENT ASSAY (ELISA). |
| GC SCREEN | BLOOD | POSITIVE NICOTINE | | | ANALYSIS BY ENZYME-LINKED IMMUNOSORBENT ASSAY (ELISA). |

THE FOLLOWING IS A GENERAL LIST OF COMPOUND CLASSES
INCLUDED IN THE GAS CHROMATOGRAPHIC SCREEN. OTHER
SPECIFIED COMPOUNDS OUTSIDE THESE CLASSES ARE ALSO
INCLUDED. PLEASE NOTE THAT NOT ALL KNOWN COMPOUNDS
INCLUDED IN EACH SPECIFIED CLASS OR HEADING ARE
INCLUDED. THE DETECTION OF ANY PARTICULAR  COMPOUND IS
CONCENTRATION-DEPENDENT. FOR A DETAILED LIST OF ALL
COMPOUNDS INCLUDED IN THIS SCREEN, PLEASE CONTACT
NATIONAL MEDICAL SERVICES.

ANALGESICS (OPIOID AND NON-OPIOID), ANESTHETICS,
ANTIASTHMATIC AGENTS, ANTICHOLINERGIC AGENTS,
ANTICONVULSANT AGENTS, ANTIDEPRESSANTS,
ANTIEMETIC AGENTS, ANTIHISTAMINES, ANTIPARKINSONIAN
AGENTS, ANTIPSYCHOTIC AGENTS, ANTITUSSIVE AGENTS,
ANXIOLYTICS (BENZODIAZEPINES AND OTHERS),
CARDIOVASCULAR AGENTS (NON-DIGITALIS), HALLUCINOGENS,
HYPNOSEDATIVES (BARBITURATE AND OTHERS), MUSCLE
RELAXANTS, NON-STEROIDAL ANTI-INFLAMMATORY AGENTS
(EXCLUDING SALICYLATE) AND STIMULANTS (AMPHETAMINE-LIKE
AND OTHERS).
ANALYSIS SCREENED BY GAS CHROMATOGRAPHY (GC) AND
CONFIRMED BY GAS CHROMATOGRAPHY/MASS SPECTROMETRY
(GC/MS).

| SEDATIVES SCREEN | BLOOD | NONE DETECTED |
|---|---|---|

(Additional Work on Report)

NATIONAL MEDICAL SERVICES                          CONFIDENTIAL Analysis Report
3701 Welsh Rd, PO Box 433A, Willow Grove, PA 19090-0437
(215)657-4900  Fax: (215)657-2972
e-mail: nms@nmslab.com                                              Page    3
ROBERT A. MIDDLEBERG, PhD, DABFT, DABCC, Laboratory Director

Control # 30117534

Date Received: 03/10/04          Name: CLIATT,DONTOVIOUS

20107
Date Reported: 05/27/04          I.D.: 03MM00255

ALABAMA DEPT. OF FORENSIC SCIENCES
JACK KALIN-BIRM. DIV.            Report Status: ** FINAL REPORT **      SPECIMEN COLLECTION
1001 SOUTH 13TH STREET                                                  Date: Not Provided
BIRMINGHAM      AL US      35205                                        Time: Not Provided        268956    8

| Analyte | Specimen | Results | Units | Rep.Limit | Reference Data/Comments |
|---------|----------|---------|-------|-----------|-------------------------|
| | | | | | SCOPE OF ANALYSIS: |
| | | | | | BARBITURATES (AMOBARBITAL, BUTALBITAL, BUTABARBITAL, |
| | | | | | PENTOBARBITAL, SECOBARBITAL), BENZODIAZEPINES |
| | | | | | (DIAZEPAM, NORDIAZEPAM, CHLORDIAZEPOXIDE), |
| | | | | | THEOPHYLLINE, PHENYTOIN, MEPROBAMATE (CARISOPRODOL). |
| | | | | | ANALYSIS SCREENED BY GAS CHROMATOGRAPHY (GC) AND |
| | | | | | CONFIRMED BY GAS CHROMATOGRAPHY/MASS SPECTROMETRY |
| | | | | | (GC/MS). |

8095  RAPID TOX PANEL II, URINE

| Analyte | Specimen | Results | Units | Rep.Limit |
|---------|----------|---------|-------|-----------|
| OPIATES (CROSS REACTIVES) | URINE | NONE DETECTED | NG/ML | 300 |
| PHENCYCLIDINE (CROSS REACTIVES) | URINE | NONE DETECTED | NG/ML | 25 |
| AMPHETAMINES (CROSS REACTIVES) | URINE | NONE DETECTED | NG/ML | 1000 |
| COCAINE/METABOLITES (CROSS REACTIVES) | URINE | NONE DETECTED | NG/ML | 300 |
| CANNABINOIDS (CROSS REACTIVES) | URINE | PRESUMPTIVE POSITIVE | NG/ML | 50 |
| BARBITURATES (CROSS REACTIVES) | URINE | NONE DETECTED | NG/ML | 300 |
| BENZODIAZEPINES (CROSS REACTIVES) | URINE | NONE DETECTED | NG/ML | 300 |
| METHADONE (CROSS REACTIVES) | URINE | NONE DETECTED | NG/ML | 300 |
| PROPOXYPHENE (CROSS REACTIVES) | URINE | NONE DETECTED | NG/ML | 300 |

ANALYSIS BY ENZYME IMMUNOASSAY (EIA).

5327  CANNABINOID CONFIRMATION, URINE

| Analyte | Specimen | Results | Units | Rep.Limit |
|---------|----------|---------|-------|-----------|
| DELTA-9 CARBOXY THC (MAJOR THC MARIHUANA METAB.) | URINE | 24 | NG/ML | 15 |

NO REFERENCE DATA IS PROVIDED FOR THE SPECIMEN TYPE
SUBMITTED FOR THIS ANALYSIS.
ANALYSIS BY GAS CHROMATOGRAPHY/MASS SPECTROMETRY

(Additional Work on Report)

NATIONAL MEDICAL SERVICES
3701 Welsh Rd, PO Box 433A, Willow Grove, PA 19090-0437
(215)657-4900  Fax: (215)657-2972
e-mail: nms@nmslab.com
ROBERT A. MIDDLEBERG, PhD, DABFT, DABCC, Laboratory Director

CONFIDENTIAL Analysis Report

Page    4

Control # 30117534

Date Received: 03/10/04

Name: CLIATT,DONTOVIOUS

20107

Date Reported: 05/27/04

ALABAMA DEPT. OF FORENSIC SCIENCES
JACK KALIN-BIRM. DIV.
1001 SOUTH 13TH STREET
BIRMINGHAM      AL US     35205

I.D.: 03MM00255

Report Status: ** FINAL REPORT **

SPECIMEN COLLECTION
Date: Not Provided
Time: Not Provided        268956    8

| Analyte | Specimen | Results | Units | Rep.Limit | Reference Data/Comments |
|---------|----------|---------|-------|-----------|-------------------------|
|         |          |         |       |   (GC/MS).|                         |

(End of Report)





ALABAMA
DEPARTMENT OF FORENSIC SCIENCES

REGIONAL LABORATORY
P.O. BOX 210516
MONTGOMERY, AL 36121-0516
(334) 242-2938
FACSIMILE (334) 240-3284

MEDICAL EXAMINER
P.O. BOX 240591
MONTGOMERY, AL 36124-0591
(334) 242-3093
FACSIMILE (334) 260-8734

September 9, 2003

Honorable Kenneth E. Davis
District Attorney 26th Judicial Circuit
P. O. Box 939
Phenix City, Alabama 36867

Re: Case No. 03MM00255
Dontovious Lamar Cliatt, subject

Dear District Attorney Davis:

The enclosed Report of Autopsy and Firearms Examination / Laboratory Results Report
constitute our partial report. We trust these memoranda are self-explanatory.

Further examinations (toxicology analyses) are being conducted and reports will be
issued as they are completed.

Please do not hesitate to contact us should you have any questions relative to this case.

Sincerely yours,

Stephen Boudreau, M. D.
State Medical Examiner

SB:jps

Enclosures (2)

cc:     Coroner Linda Key

        Agent Ricky Agerton
        Alabama Bureau of Investigation

        Investigator Grover Goodrich
        Russell County Sheriff's Department



ALABAMA
DEPARTMENT OF FORENSIC SCIENCES

REGIONAL LABORATORY
P.O. BOX 210516
MONTGOMERY, AL 36121-0516
(334) 242-2938
FACSIMILE (334) 240-3284

MEDICAL EXAMINER
P.O. BOX 240591
MONTGOMERY, AL 36124-0591
(334) 242-3093
FACSIMILE (334) 260-8734

## REPORT OF AUTOPSY

CASE NO.    03MM00255(01AH30)    DATE/TIME:  May 5, 2003
                                             0930 - 1030

COUNTY:    Russell

DECEDENT:  Dontovious Lamar Cliatt

### PATHOLOGIC DIAGNOSES:

I.   Multiple Gunshot Wounds.

II.  Postmortem Toxicology to follow.

—

CAUSE OF DEATH:    Multiple Gunshot Wounds

MANNER OF DEATH:    Homicide

Page 1 of 8

EVIDENCE OF INJURY:

There are multiple gunshot wounds.

Gunshot Wound A:  There is a gunshot wound of the right hand.  The wound is seen to extend in a furrow along the right hand with the jacket and fragments of bullet coming to rest in the dorsum of the right hand.  Extends through the right wrist and the projectile is retrieved from the volar surface of the right forearm, a distance of 6 cm from the right wrist.  The projectile measures approximately a centimeter in diameter and is markedly deformed. The skin along the entry wound is split.  The wound is open to the bone on the right wrist.  The wound globally measures approximately 8 cm x 4 cm in width extending superiorly along the hand and wrist.

Gunshot Wound B:  There is a gunshot wound in the left flank just superior to the pelvic brim and posteriorly in the left flank. The bullet tract extends through the musculature of the back and flank to the right flank where a projectile is retrieved in the subcutis of the right flank.  The bullet measures approximately ½ inch in its greatest diameter.  There is bruising of the musculature along the bullet tract.  No vital organs are involved in the length of the bullet tract.

Gunshot Wound C:  There is a gunshot entry wound 6 inches from the top of the head and 5 inches from the posterior aspect of the head superior and slightly anterior to the left ear.  It is approximately ¾ inch in diameter.  The bullet is seen to track through the left globe fracturing the skull across the temporal skull and enters the skull extensively fracturing the left orbit. It is seen to come to rest in the ethmoid plates centrally.  A projectile is retrieved from this region.  It is approximately ½ inch in its greatest diameter.  It is markedly deformed.  There is extensive hemorrhage in the surrounding skull.  The brain is pulpified along the frontal lobes with extensive hemorrhaging in the subarachnoid space.  There are multiple fragments of bone within the frontal lobes.  As indicated, the left eye is completely pulpified.

Gunshot Wound D:  There is a gunshot wound in the left chest 3 inches x 2 inches in width.  The bullet is seen to track to the right and posteriorly.  The entry wound is 9 inches from the tip of the shoulder.  The bullet traverses the soft tissues of the back and is seen to lie in the subcutis at a distance of 6 inches from the superior portion of the shoulder and 9 inches from the lateral aspect of the shoulder.  The bullet is retrieved.  It is greatly deformed and measures approximately ½ inch in length.

Page 2 of 8
Case 03MM00255

Gunshot Wound E:   There is a gunshot entry wound in the left chest just superior to the left clavicle.   The bullet is seen to traverse the left chest with the tract extending to the right shoulder.   The bullet is found within the subcutis of the right shoulder.   It is markedly deformed and measures approximately ½ inch in diameter.   The tract of the bullet is seen to extend through the mediastinum.   The musculature of the back and to the right shoulder, as indicated, is immediately posterior to the right shoulder.   No vital structures appear to be in the tract of this bullet.   The entry wound measures approximately 2 inches in an oval shape.   There is extensive bruising of the mediastinum on its posterior aspect along the tract of the bullet.

Gunshot Wound F:   There is a gunshot entry wound just below the left nipple 9 inches from the back and approximately 2 inches from the lateral chest wall.   The bullet is seen to track inferiorly and slightly posteriorly.   It extends into the left hemithorax into the pericardium.   It is seen to pulpify the heart along the bullet tract.   The bullet is found in the base of the right lung. It is associated with a hemothorax of approximately 2 liters.   As indicated, the left ventricle is pulpified along the course of the bullet with free opening of the left ventricular wall on its lateral aspect and anteriorly.   The pericardium is torn along the tract of the bullet.   The bullet measures approximately ½ inch in diameter and it is markedly deformed.

Gunshot Wound G:   There is a gunshot entry wound and an exit wound in the left arm 8 inches from the superior portion of the shoulder and extending inferiorly.   Approximately 4 inches from the back of the arm the bullet is seen to exit anteriorly on the arm.   The bullet is found resting in clothing at this point.   It is greatly deformed and measures approximately 0.5 cm in its greatest diameter.   There is what appears to be a second gunshot entry wound in the left arm extending through the full thickness of the arm and, again, exiting along this path.   It is seen to extend through the soft tissues.   It again appears to exit the arm on its inner aspect and extend into the superior aspect of the chest. The bullet is retrieved in the subcutis posteriorly of the left chest.   Again, it measures approximately ½ inch in diameter.   It is greatly deformed.   No vital organs are along the path of the bullet.   The musculature of the left back is disrupted.   There is, in addition, what appears to be a gunshot wound involving the fingers of the left hand.   There is a marked area of disruption of the tip of the right index finger with the tip blown off as well as portions of the ring finger.   This would appear to represent a completely separate gunshot wound from the one identified in the right hand and wrist.

**EVIDENCE OF MEDICAL INTERVENTION:**

There is a lead on the posterior chest.   No other evidence of medical intervention is identified.

**EXTERNAL EXAMINATION:**

The body is that of a black male appearing his stated age of 21 years weighing 155 pounds and 72 inches in length.

SCARS, TATTOOS, DISTINGUISHING FEATURES:  There is a tattoo on the left upper arm in a snake-like design.   No other distinguishing features are identified.

CONDITION OF THE BODY:  There is posterior dependent lividity and rigor mortis present diffusely.

HEAD AND FACE (excluding injuries):  The head is normocephalic and covered with blackish hair.  The face displays whiskers which are sparse and in a moustache fashion.  Eyes:  The right eye only is present.  The pupil is dilated and fixed.  It is brown in color. Nares:  The nose is unremarkable.  Oral cavity:  The mouth is filled with teeth in poor repair.  The tongue is unremarkable. Ears:  The ears are unremarkable.

NECK:  The neck is symmetrical.

CHEST:  The chest is unremarkable with the exception of the wounds noted above.

ABDOMEN:  The abdomen is unremarkable.

EXTERNAL GENITALIA:  Normal adult male genitalia.

EXTREMITIES:   There is a linear abrasion along the left leg 3 inches in length in the thigh at a distance of approximately 10 inches from the pelvic brim having the appearances of a bullet graze.  The skin is intact.  The wound does not enter the thigh. BACK:  Please see evidence of injury.

**INTERNAL EXAMINATION (excluding injuries):**

SEROSAL   SURFACES:   The  abdominal  serosal  surfaces  are unremarkable.  All abdominal viscera all present and in their usual positions.

CARDIOVASCULAR:  Please see evidence of injury.  The heart weighs 300 grams.  The myocardium is of normal color and consistency. The valves are pliant.  The thoracic aorta displays no evidence of atherosclerosis.  The great vessels to the head and neck are unremarkable and widely patent.  The abdominal aorta displays no evidence of atherosclerosis.  The great vessels to the abdominal viscera are widely patent as are the renal arteries.  The inferior vena cava is unremarkable.

RESPIRATORY:  The right and left lungs weigh 250 and 340 grams respectively.  The pleural surfaces are a purple-gray.  The lungs display no evidence of consolidation or tumefaction.  The cut surfaces demonstrate the bronchi to contain small amounts of blood-tinged mucous.  The trachea contains blood-tinged mucous. They are otherwise unremarkable.

HEPATOBILIARY:  The liver weighs 1000 grams.  The parenchyma is a normal gray brown.  The capsular surface is smooth and glistening. The cut surface is unremarkable.  The gallbladder contains small amounts of bile.  The common bile duct is widely patent.  The pancreas is grossly unremarkable.

ENDOCRINE:  The pituitary, thyroid and adrenal glands are unremarkable.

RETICULOENDOTHELIAL:  The spleen weighs 50 grams.  It is grossly unremarkable. —The pulp is of normal consistency and distribution. No abnormality of regional lymph nodes is identified.

GASTROINTESTINAL:  The esophagus is unremarkable.  The stomach contains approximately 50 cc of mucoid material.  It is otherwise unremarkable.  The duodenum, large and small bowels are unremarkable.  The appendix is present.

GENITOURINARY:  The right and left kidneys weigh 110 grams each. The capsules strip easily.  The cortices are smooth and regular. The calices, pelves and ureters are unremarkable.  The urinary bladder contains approximately 50 cc of clear urine.  The prostate gland is unremarkable.  The genitalia are normal adult male genitalia.

CENTRAL NERVOUS:  Please see evidence of injury.  The brain weighs 1300 grams as indicated.  The frontal portion of the brain is pulpified and displays areas of extensive hemorrhage.  It is otherwise unremarkable.

NECK ORGANS:  The strap muscles of the neck are unremarkable.  The hyoid bone and larynx are unremarkable.  The cervical vertebral column is intact.

MUSCULOSKELETAL:   Please see evidence of injury.

**AUTHORIZATION:**

An autopsy is carried on the remains of Dontovias Lamar Cliatt on May 5, 2003 at the Central Alabama Forensic Medicine Facility in Montgomery, Alabama, at the behest of Ken Davis, District Attorney for Russell County, pursuant to Act 87-5-25 commencing at 0930.

**PERSONS PRESENT:**

**IDENTIFICATION:**

The body is identified to me by Scott Belton, Investigator.  There is a tag on the right wrist.  Photographs and fingerprints are taken.

**CLOTHING AND PERSONAL EFFECTS:**

CLOTHING: .  The body is clothed in a hat, shirt, pants, socks, sneakers, and underwear.  The shirt is stating Polo with a logo of polo players.  The hat is an Alabama University hat.

PERSONAL EFFECTS:  Please see DFS-1 Form.  A small bag of plant substance is identified in one of the pockets.

**EVIDENCE:**

Please see DFS-1 Form.


Stephen Boudreau, M.D.
State Medical Examiner



SB:pl

Case No. 03MM0855

Date 5-5-03

Form DFS-22

ALABAMA DEPARTMENT OF
FORENSIC SCIENCES



ALABAMA
# DEPARTMENT OF FORENSIC SCIENCES

1001 13TH STREET SOUTH
BIRMINGHAM, AL 35205-3498
TEL (205) 933-6621

P. O. BOX 55725
BIRMINGHAM, AL 35255-5725
FAX (205) 933-0820

## TOXICOLOGICAL ANALYSIS REPORT

| Subject | **Dontovious Lamar Cliatt** | Case No | **03MM00255** |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Report to | State Medical Examiner Stephen Boudreau, MD<br>Alabama Department of Forensic Sciences<br>P. O. Box 240591, 8160 Auburn University Montgomery Drive<br>Montgomery, AL  36124-0591 | Received<br>Reported | 5/7/2003<br>6/10/2004 |

**Evidence received**

| Item | Description | Received from | Agency | Date |
|---|---|---|---|---|
| 1 | Sealed plastic bag containing toxicology specimens. | Clara Marshall | Alabama Department of Forensic Sciences | 5/7/2003 |

**Evidence analyzed (Including sub-items)**

| Item | Specimen | Analyte | Result | Method(s) | Notes |
|---|---|---|---|---|---|
| 1A1-A3 | Blood, peripheral | Reference laboratory analysis | | | 3 |
| 1B | Blood, central | | NA | — | |
| 1C | Vitreous Humor | | NA | | |
| 1D | Urine | Reference laboratory analysis | | | 3 |
| 1E | Bile | | NA | | |
| 1G | Liver | | NA | | |

**Footnotes**

| | |
|---|---|
| NA | Not analyzed/not applicable. |
| 3 | Analysis was conducted by a reference laboratory; report is attached. |

*Sarawanee C. Parish*

Sarawanee C. Parish, PhD, DFTCB
Forensic Scientist

## END OF REPORT

Remaining evidence is scheduled to be disposed 12 months from the reported date unless storage space becomes limited or alternate arrangements are made prior thereto.

RECEIVED

Complete report includes 4-page appendix.



ALABAMA
DEPARTMENT OF FORENSIC SCIENCES

REGIONAL LABORATORY
P.O. BOX 210516
MONTGOMERY, AL 36121-0516
(334) 242-2938
FACSIMILE (334) 240-3284

MEDICAL EXAMINER
P.O. BOX 240591
MONTGOMERY, AL 36124-0591
(334) 242-3093
FACSIMILE (334) 260-8734

May 5, 2003

Coroner Linda Key
1910 18th Street
Phenix City, Alabama 36867

Re:    Case 03MM00255
Dontovious Lamar Cliatt, subject

Dear Madam:

This department performed an examination on the body of Dontovious Lamar Cliatt.. Based on the findings of this examination and the presently known circumstances of the death, it is my opinion that the cause of death is Multiple Gunshot Wounds.  The manner of death is Homicide.

This preliminary report is intended to expedite death certificate.  It should not be used for grand jury or court proceedings in lieu of the final report of the complete findings, which will also be forwarded to the District Attorney of Russell County and the appropriate investigative agency.    ——

Sincerely yours,

Stephen Boudreau, M. D.
State Medical Examiner

SB:jmg

cc:    Honorable Kenneth Davis

Ricky Agerton, Agent
Alabama Bureau of Investigation

Grover Goodrich, Investigator
Russell County Sheriff's Department



ALABAMA
# DEPARTMENT OF FORENSIC SCIENCES

| REGIONAL LABORATORY | MEDICAL EXAMINER |
|---|---|
| P.O. BOX 210516 | P.O. BOX 240591 |
| MONTGOMERY, AL 36121-0516 | MONTGOMERY, AL 36124-0591 |
| (334) 242-2938 | (334) 242-3093 |
| FACSIMILE (334) 240-3284 | FACSIMILE (334) 260-8734 |

July 30, 2003

Re:     Case 03MM00255
Dontavious L. Cliatt, subject

Cross Reference:  03MM00254

MEMORANDUM:     To File

BY:     Katherine T. Richert, Forensic Scientist

SUBJECT:     Firearms Examination / Laboratory Results

On May 19, 2003, Agent Ricky Agerton of the Alabama Bureau of Investigations delivered to the undersigned certain evidence identified as relative to the above styled case. The following is a description of the evidence and the results of laboratory examinations:

Item 1:     One sealed brown paper bag labeled in part "Darius Farley", containing:

Item 1A:     One Smith & Wesson model 4046 semi-automatic pistol, caliber .40 S&W, serial number VUV4730, without magazine inserted.  This pistol was test fired using submitted magazine and ammunition.

Item 1B:     One brown paper bag containing:

Item 1B-1:     One Smith & Wesson pistol magazine.  This magazine was used for testing purposes.

Items 1B-2 through 1B-4:     Three (3) unfired Federal brand cartridges, caliber .40 S&W.  Two (2) of these cartridges were used for testing purposes.

Item 2:     One sealed brown paper bag labeled in part "Deputy Fedde", containing:

*KTRichert*

Firearms Examination / Laboratory Results   Case Number 03MM00255          Page 1 of 15



Form DFS-21

O O2515

## ALABAMA DEPARTMENT OF FORENSIC SCIENCES

Date _____    Case No. _____



Thoracic abdominal, male, anterior and posterior views

**Item 2A:**   One Glock model 17 semi-automatic pistol, caliber 9mm, serial number BLM897US, without magazine inserted. This pistol was test fired using submitted magazine and ammunition.

**Item 2B:**   One Glock pistol magazine which contains Items 2B-1 through 2B-10. This magazine was used for testing purposes.

**Items 2B-1 through 2B-10:**   Ten (10) unfired Speer brand cartridges, caliber 9mm. Two (2) of these cartridges were used for testing purposes.

**Item 2C:**   One unfired Speer brand cartridge, caliber 9mm.

**Item 3:**   One sealed brown paper bag labeled in part "Deputy Mark Wells", containing:

**Item 3A:**   One H&K model USP semi-automatic pistol, caliber 9mm, serial number 24-028594, without magazine inserted. This pistol was test fired using submitted magazine and ammunition.

**Item 3B:**   One H&K pistol magazine which contains Items 3B1 through 3B5. This magazine was used for testing purposes.

**Items 3B1 through 3B5:**   Five (5) unfired Speer brand cartridges, caliber 9mm. Two (2) of these cartridges were used for testing purposes.

**Item 3C:**   One unfired Speer brand cartridge, caliber 9mm.

**Item 4:**   One sealed brown paper bag labeled in part "Jarrod Barr", containing:

**Item 4A:**   One Glock model 22 semi-automatic pistol, caliber .40 S&W, serial number ERZ702US, without magazine inserted. This pistol was test fired using submitted magazine and ammunition.

**Item 4B:**   One Glock pistol magazine. This magazine was used for testing purposes.

**Items 4C through 4Q:**   Fifteen (15) unfired Federal brand cartridges, caliber .40 S&W. Two (2) of these cartridges were used for testing purposes.

**Item 5:**   One sealed brown paper bag labeled in part "David Reeves", containing:

**Item 5A:**   One Glock model 23C semi-automatic pistol, caliber .40 S&W, serial number EMC959US, without magazine inserted. This pistol was test fired using submitted magazine and ammunition.

Firearms Examination / Laboratory Results   Case Number 03MM00255          Page 2 of 15

**Item 5B:** One Glock pistol magazine. This magazine was used for testing purposes.

**Items 5C through 5N:** Twelve (12) unfired Federal brand cartridges, caliber 40 S&W. Two (2) of these cartridges were used for testing purposes.

**Item 6:** One sealed brown paper bag labeled in part "Patrick Daughtrey", containing:

**Item 6A:** One Smith & Wesson model 4046 semi-automatic pistol, caliber 40 S&W, serial number VZP1020, without magazine inserted. This pistol was test fired using submitted magazine and ammunition.

**Item 6B:** One brown paper bag containing:

**Item 6B-1:** One Smith & Wesson pistol magazine. This magazine was used for testing purposes.

**Items 6B-2 through 6B-12:** Eleven (11) unfired Federal brand cartridges, caliber 40 S&W. Two (2) of these cartridges were used for testing purposes.

**Item 7:** One sealed brown paper bag labeled in part "Christopher Brenan", containing:

**Item 7A:** One Glock model 22 semi-automatic pistol, caliber 40 S&W, serial number EXL750US, without magazine inserted. This pistol was test fired using submitted magazine and ammunition.

**Item 7B:** One Glock pistol magazine, caliber 40 S&W. This magazine was used for testing purposes.

**Item 7C through 7Q:** Fifteen (15) unfired Federal brand cartridges, caliber 40 S&W. Two (2) of these cartridges were used for testing purposes.

**Item 8:** One sealed cardboard box containing:

**Item 8A:** One Smith & Wesson model 5906 semi-automatic pistol, caliber 9mm, serial number TCP1380, without magazine inserted. As received, this pistol had a fired cartridge case partially remaining in the chamber.

**Item 8A-1:** One fired Winchester brand cartridge case, caliber 9mm, which was improperly extracted and still partially in the chamber of the Smith & Wesson pistol described as Item 8A. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Smith & Wesson pistol previously described as Item 8A.

**Item 8B:**  One pistol magazine which contains Items 8B-1 through 8B-7. This magazine was used for testing purposes.

**Items 8B-1 through 8B-7:**  Seven (7) unfired Winchester brand cartridges, caliber 9mm. Two (2) of these cartridges were used for testing purposes.

**Item 9**  One sealed manila envelope containing one pistol magazine which contains Items 9A through 9L.

**Items 9A through 9D:**  Four (4) unfired Winchester brand cartridges, caliber 9mm. Two (2) of these cartridges were used for testing purposes.

**Item 9E:**  One unfired Remington brand cartridge, caliber 9mm.

**Items 9F through 9L:**  Seven (7) unfired Winchester brand cartridges, caliber 9mm.

**Item 10**  One sealed manila envelope containing one Glock pistol magazine, caliber 40 S&W.

**Item 11**  One sealed manila envelope containing one Glock pistol magazine, caliber 40 S&W.

**Item 12**  One sealed manila envelope containing:

**Item 12A**  One manila envelope labeled in part "#1" containing one fired Federal brand cartridge case, caliber 40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 4A.

**Item 12B**  One manila envelope labeled in part "#2", containing one fired Federal brand cartridge case, caliber 40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 4A.

**Item 12C**  One manila envelope labeled in part "#3", containing one fired Federal brand cartridge case, caliber 40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 4A.

**Item 12D**  One manila envelope labeled in part "#4", containing one fired Federal brand cartridge case, caliber 40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 4A.

**Item 12E:** One manila envelope labeled in part "#5", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Smith & Wesson pistol described previously as Item 1A.

**Item 12F:** One manila envelope labeled in part "#6", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 7A.

**Item 12G:** One manila envelope labeled in part "#7", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 4A.

**Item 12H:** One manila envelope labeled in part "#8", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 7A.

**Item 12I:** One manila envelope labeled in part "#9", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 7A.

**Item 12J:** One manila envelope labeled in part "#10", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 7A.

**Item 12K:** One manila envelope labeled in part "#11", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 7A.

**Item 12L:** One manila envelope labeled in part "#12", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Smith & Wesson pistol described previously as Item 1A.

Item 12M:  One manila envelope labeled in part "#13", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Smith & Wesson pistol described previously as Item 1A.

Item 12N:  One manila envelope labeled in part "#14", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 7A.

Item 12O:  One manila envelope labeled in part "#15", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 7A.

Item 12P:  One manila envelope labeled in part "#16", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 7A.

Item 12Q:  One manila envelope labeled in part "#17", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 5A.

Item 12R:  One manila envelope labeled in part "#18", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 7A.

Item 12S:  One manila envelope labeled in part "#19", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 7A.

Item 12T:  One manila envelope labeled in part "#20", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 7A.

**Item 12U:**      One manila envelope labeled in part "#21", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Smith & Wesson pistol described previously as Item 6A.

**Item 12V:**      One manila envelope labeled in part "#22", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Smith & Wesson pistol described previously as Item 1A.

**Item 12W:**      One manila envelope labeled in part "#23", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Smith & Wesson pistol described previously as Item 1A.

**Item 12X:**      One manila envelope labeled in part "#24", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Smith & Wesson pistol described previously as Item 1A.

**Item 12Y:**      One manila envelope labeled in part "#25", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 4A.

**Item 12Z:**      One manila envelope labeled in part "#26", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 4A.

**Item 12AA:**     One manila envelope labeled in part "#27", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 4A.

**Item 12BB:**     One manila envelope labeled in part "#28", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 4A.

Item 12CC:    One manila envelope labeled in part "#29", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 4A.

Item 12DD:    One manila envelope labeled in part "#30", containing one fired Speer brand cartridge case, caliber 9mm.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 2A.

Item 12EE:    One manila envelope labeled in part "#31", containing one fired Speer brand cartridge case, caliber 9mm.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 2A.

Item 12FF:    One manila envelope labeled in part "#32", containing one fired Speer brand cartridge case, caliber 9mm.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 2A.

Item 12GG:    One manila envelope labeled in part "#33", containing one fired Speer brand cartridge case, caliber 9mm.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 2A.

Item 12HH:    One manila envelope labeled in part "#34", containing one fired Speer brand cartridge case, caliber 9mm.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 2A.

Item 12II:    One manila envelope labeled in part "#35", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 4A.

Item 12JJ:    One manila envelope labeled in part "#36", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 4A.

Item 12KK:    One manila envelope labeled in part "#37", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 7A.

**Item 12LL:** One manila envelope labeled in part "#38", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 4A.

**Item 12MM:** One manila envelope labeled in part "#39", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 4A.

**Item 12NN:** One manila envelope labeled in part "#40", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 7A.

**Item12OO:** One manila envelope labeled in part "#41", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Smith & Wesson pistol described previously as Item 1A.

**Item 12PP:** One manila envelope labeled in part "#42", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 7A.

**Item 12QQ:** One manila envelope labeled in part "#43", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 7A.

**Item 12RR:** One manila envelope labeled in part "#44", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 7A.

**Item 12SS:** One manila envelope labeled in part "#45", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Smith & Wesson pistol described previously as Item 1A.

**Item 12TT:**  One manila envelope labeled in part "#46", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Smith & Wesson pistol described previously as Item 1A.

**Item 12UU:**  One manila envelope labeled in part "#47", containing one fired Speer brand cartridge case, caliber 9mm.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the H&K pistol described previously as Item 3A.

**Item 12VV:**  One manila envelope labeled in part "#48", containing one fired Speer brand cartridge case, caliber 9mm.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the H&K pistol described previously as Item 3A.

**Item 12WW:**  One manila envelope labeled in part "#49", containing one fired Federal brand cartridge case, caliber .40 S&W.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 4A.

**Item 12XX:**  One manila envelope labeled in part "#50", containing one fired Speer brand cartridge case, caliber 9mm.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the H&K pistol described previously as Item 3A.

**Item 12YY:**  One manila envelope labeled in part "#51", containing one fired Speer brand cartridge case, caliber 9mm.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the H&K pistol described previously as Item 3A.

**Item 12ZZ:**  One manila envelope labeled in part "#52", containing one fired Speer brand cartridge case, caliber 9mm.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the H&K pistol described previously as Item 3A.

**Item 12AAA:**  One manila envelope labeled in part "#53", containing one fired Speer brand cartridge case, caliber 9mm.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the H&K pistol described previously as Item 3A.

**Item 12BBB:**  One manila envelope labeled in part "#54", containing one fired Speer brand cartridge case, caliber 9mm.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the H&K pistol described previously as Item 3A.

**Item 12CCC:**  One manila envelope labeled in part "#55", containing one fired Speer brand cartridge case, caliber 9mm.  Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the H&K pistol described previously as Item 3A.

**Item 12DDD:** One manila envelope labeled in part "#56", containing one fired Speer brand cartridge case, caliber 9mm. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the H&K pistol described previously as Item 3A.

**Item 12EEE:** One manila envelope labeled in part "#57", containing one fired Federal brand cartridge case, caliber .40 S&W. Laboratory examination of this cartridge case revealed that it has been fired in the chamber of the Glock pistol described previously as Item 4A.

**Item 13:** One sealed manila envelope containing:

**Item 13A:** One manila envelope labeled in part "#58"and "By head of suspect", containing one unfired Winchester brand cartridge, caliber 9mm.

**Item 13B:** One manila envelope labeled in part "#59"and "Bumper of car", containing one unfired Winchester brand cartridge, caliber 9mm.

**Item 13C:** One manila envelope labeled in part "#60", containing one fired copper jacketed bullet. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through the barrel of the Glock pistols described previously as Items 4A, 5A, or 7A. This bullet was not fired through any of the barrels of the Smith & Wesson, Glock or Heckler & Koch pistols described elsewhere as Items 1A, 2A, 3A, 6A, or 8A.

**Item13D:** One manila envelope labeled in part "#61", containing one fired copper jacketed bullet. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through the barrel of the Glock pistols described previously as Items 4A, 5A, or 7A. This bullet was not fired through any of the barrels of the Smith & Wesson, Glock or Heckler & Koch pistols described elsewhere as Items 1A, 2A, 3A, 6A, or 8A.

**Item 13E:** One manila envelope labeled in part "#62", containing one fired copper jacketed bullet. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through the barrel of the Glock pistols described previously as Items 4A, 5A, or 7A. This bullet was not fired through any of the barrels of the Smith & Wesson, Glock or Heckler & Koch pistols described elsewhere as Items 1A, 2A, 3A, 6A, or 8A.

Firearms Examination / Laboratory Results    Case Number 03MM00255    Page 11 of 15

**Item 13F:**    One manila envelope labeled in part "#63", containing one fired copper jacketed bullet. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through the barrel of the Glock pistols described previously as Items 4A, 5A, or 7A. This bullet was not fired through any of the barrels of the Smith & Wesson, Glock or Heckler & Koch pistols described elsewhere as Items 1A, 2A, 3A, 6A, or 8A.

**Item 13G:**    One manila envelope labeled in part "#64", containing one fired copper jacketed bullet. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through the barrel of the Glock pistols described previously as Items 4A, 5A, or 7A. This bullet was not fired through any of the barrels of the Smith & Wesson, Glock or Heckler & Koch pistols described elsewhere as Items 1A, 2A, 3A, 6A, or 8A.

**Item 13H:**    One manila envelope labeled in part "#65", containing one fired copper jacketed bullet. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through the barrel of the Smith & Wesson pistols described previously as Items 1A or 6A. This bullet was not fired through any of the barrels of any of the Glock pistols described elsewhere as Items 4A, 5A, or 7A.

**Item 13I:**    One manila envelope labeled in part "#66", containing one fired copper jacketed bullet. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through the barrel of the Smith & Wesson pistols described previously as Items 1A or 6A. This bullet was not fired through any of the barrels of any of the Glock pistols described elsewhere as Items 4A, 5A, or 7A.

**Item 13J:**    One manila envelope labeled in part "#67", containing one piece of lead with a small piece of brass jacket attached. Laboratory examination of this .40/10mm caliber bullet revealed it to be too damaged for any further comparison.

**Item 13K:**    One manila envelope labeled in part "#68", containing one fired, badly damaged copper jacketed bullet. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through the barrel of the Glock pistols described previously as Items 4A, 5A, or 7A. This bullet was not fired through any of the barrels of the Smith & Wesson, Glock or Heckler & Koch pistols described elsewhere as Items 1A, 2A, 3A, 6A, or 8A.

**Item 13L:** One manila envelope labeled in part "#69", containing one fired copper jacketed bullet. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through the barrel of the Glock pistols described previously as Items 4A, 5A, or 7A. This bullet was <u>not</u> fired through any of the barrels of the Smith & Wesson, Glock or Heckler & Koch pistols described elsewhere as Items 1A, 2A, 3A, 6A, or 8A.

**Item 13M:** One manila envelope labeled in part "#70", containing one fired copper jacketed bullet. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through the barrel of the Glock pistols described previously as Items 4A, 5A, or 7A. This bullet was <u>not</u> fired through any of the barrels of the Smith & Wesson, Glock or Heckler & Koch pistols described elsewhere as Items 1A, 2A, 3A, 6A, or 8A.

**Item 14:** One sealed manila envelope containing:

**Item 14A:** One sealed manila envelope labeled in part "Projectile found upper left back", containing one fired copper jacketed bullet wrapped in paper. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through the barrel of the Glock pistols described previously as Items 4A, 5A, or 7A. This bullet was <u>not</u> fired through any of the barrels of the Smith & Wesson, Glock or Heckler & Koch pistols described elsewhere as Items 1A, 2A, 3A, 6A, or 8A.

**Item 14B:** One sealed manila envelope labeled in part "Projectile found lower right back", containing one fired copper jacketed bullet wrapped in paper. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through the barrel of the Glock pistols described previously as Items 4A, 5A, or 7A. This bullet was <u>not</u> fired through any of the barrels of the Smith & Wesson, Glock or Heckler & Koch pistols described elsewhere as Items 1A, 2A, 3A, 6A, or 8A.

**Item 14C:** One sealed manila envelope labeled in part "Projectile found right lower chest", containing one fired copper jacketed bullet wrapped in paper. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through any of the barrels of the Smith & Wesson pistols described previously as Items 1A or 6A. This bullet was <u>not</u> fired through a barrel of any of the Glock pistols described elsewhere as Items 4A, 5A, or 7A.

**Item 14D:**   One sealed manila envelope labeled in part "Projectile found Posterior right shoulder", containing one fired copper jacketed bullet wrapped in paper. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through the barrel of the Glock pistols described previously as Items 4A, 5A, or 7A. This bullet was not fired through any of the barrels of the Smith & Wesson, Glock or Heckler & Koch pistols described elsewhere as Items 1A, 2A, 3A, 6A, or 8A.

**Item 14E:**   One sealed manila envelope labeled in part "Projectile found on top of left shoulder", containing one fired copper jacketed bullet wrapped in paper. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through the barrel of the Glock pistols described previously as Items 4A, 5A, or 7A. This bullet was not fired through any of the barrels of the Smith & Wesson, Glock or Heckler & Koch pistols described elsewhere as Items 1A, 2A, 3A, 6A, or 8A.

**Item 14F:**   One sealed manila envelope labeled in part "Projectile from head", containing one fired copper jacketed bullet wrapped in paper. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through the barrel of the Glock pistols described previously as Items 4A, 5A, or 7A. This bullet was not fired through any of the barrels of the Smith & Wesson, Glock or Heckler & Koch pistols described elsewhere as Items 1A, 2A, 3A, 6A, or 8A.

**Item 14G:**   One sealed manila envelope labeled in part "Projectile found on back of Right hand", containing two (2) pieces of fired copper jacketed bullet wrapped in paper. Laboratory examination of this .40/10mm caliber bullet revealed similar characteristics as test fired bullets; however it could not be determined whether or not it has been fired through the barrel of the Glock pistols described previously as Items 4A, 5A, or 7A. This bullet was not fired through any of the barrels of the Smith & Wesson, Glock or Heckler & Koch pistols described elsewhere as Items 1A, 2A, 3A, 6A, or 8A.

Test fires will be retained in the laboratory in the event they are needed in future testing. This evidence should be picked up by the investigative agency at the earliest opportunity.

Firearms Examination / Laboratory Results   Case Number 03MM00255          Page 14 of 15



**Case Summary:**

Item 1A, identified to be from Darius Farley, fired the following cartridge cases: 12E, 12L, 12M, 12V, 12W, 12X, 12OO, 12SS, and. 12TT

Item 2A, identified to be from Deputy Fedde, fired the following cartridge cases: 12DD, 12EE, 12FF, 12GG, and 12HH.

Item 3A, identified to be from Deputy Mark Wells, fired the following cartridge cases: 12UU, 12VV, 12XX, 12YY, 12ZZ, 12AAA, 12BBB, 12CCC, and 12DDD.

Item 4A, identified to be from Jarrod Barr, fired the following cartridge cases: 12A, 12B, 12C, 12D, 12G, 12Y, 12Z, 12AA, 12BB, 12CC, 12II, 12JJ, 12LL, 12MM, 12WW, and 12EEE.

Item 5A, identified to be from David Reeves, fired the following cartridge case: 12Q.

Item 6A, identified to be from Patrick Daughtrey, fired the following cartridge case: 12U.

Item 7A, identified to be from Christopher Brenan, fired the following cartridge cases: 12F, 12H, 12I, 12K, 12J, 12N, 12O, 12P, 12R, 12S, 12T, 12KK, 12NN, 12PP, 12QQ, and 12RR.

Item 8A, identified to be from the subject, fired the following cartridge case: 8A1.

Katherine T. Richert





ALABAMA
## DEPARTMENT OF FORENSIC SCIENCES

REGIONAL LABORATORY
P.O. BOX 210516
MONTGOMERY, AL 36121-0516
(334) 242-2938
FACSIMILE (334) 240-3284

MEDICAL EXAMINER
P.O. BOX 240591
MONTGOMERY, AL 36124-0591
(334) 242-3093
FACSIMILE (334) 260-8734

July 7, 2004

The Honorable Kenneth E. Davis
District Attorney 26th Judicial Circuit
P. O. Box 939
Phenix City, Alabama 36867

Re:     Case No.  03MM00255
        Dontovious Lamar Cliatt, subject

Dear District Attorney Davis:

Enclosed are the Toxicological Analysis Report and National Medical Services Analysis Report to the above-referenced case.  This report, together with the Report of Autopsy and Firearms Examination/Laboratory Results Report, constitute our complete findings in this case.   We trust these documents are self-explanatory.

Please do not hesitate to contact us should you have any questions relative to this case.

Sincerely yours,

Stephen Boudreau, M. D.
State Medical Examiner

SB:cdr

Enclosures (2)

cc:     Coroner Linda Key

        Agent Ricky Agerton
        Alabama Bureau of Investigation

        Investigator Grover Goodrich
        Russell County Sheriff's Department

Alabama



Effective Date: July 19th, 2004

# Western Surety Company

IN THE MATTER OF THE ESTATE OF          PROBATE COURT OF

Dontavious Cliatt                       Russell _____ COUNTY, ALABAMA

_____           Case No. _____

KNOW ALL PERSONS BY THESE PRESENTS:     Bond No. 14608343 _____

That we, Rosie Cliatt _____, as Principal, and WESTERN SURETY COMPANY, a corporation duly licensed to do business in the State of Alabama, as Surety, are held and firmly bound unto Honorable Albert O. Howard _____, Judge of Probate

of the aforesaid County, and his successors in office, in the penal sum of One Thousand Five Hundred and

00/100 _____ DOLLARS ($ 1,500.00 _____ ), for which payment, well and truly to be made and done, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents. And we waive in favor of this bond all right to claim any exemption of personal property allowed by the laws of the State of Alabama.

Sealed with our seals and dated this _____ 19th _____ day of _____ July _____, _____ 2004 ____.

THE CONDITION OF THE ABOVE OBLIGATION IS SUCH, That Whereas, the above bound

Rosie Cliatt _____ ha ____ been appointed as Administrator _____

in the above matter. Now, if the said Rosie Cliatt _____ shall well and truly

perform all the duties which are or may be required by law of Rosie Cliatt _____

as such fiduciary _____ then the above obligation to be void; otherwise to remain in full force.

_____
Rosie Cliatt                                        Principal    (L.S.)

_____ (L.S.)

Countersigned by Alabama Resident Agent:

_____
Name of Agent or Agency   Judy Wilson Payne

The Starke Agency, Inc.

Street            City              State
210 Commerce St., Montgomery, AL

WESTERN SURETY COMPANY

By _____ (L.S.)
                          Senior Vice President

BENCH NOTE

Filed in the office of the Judge of Probate of ___ Russell _____ County, Alabama, taken,

approved, and ordered to be recorded, this the _____ day of _____, _____.

_____
                                    Judge of Probate

Bond (Executor, Administrator, Guardian)

Form 1310-A-4-2002

Alabama



Effective Date: July 19th, 2004

# Western Surety Company

IN THE MATTER OF THE ESTATE OF

Dontavious Cliatt

PROBATE COURT OF

Russell ———————— COUNTY, ALABAMA

Case No. _____

KNOW ALL PERSONS BY THESE PRESENTS:

Bond No. 14608343

That we, Rosie Cliatt _____ , as Principal, and WESTERN SURETY COMPANY, a corporation duly licensed to do business in the State of Alabama, as Surety, are held and firmly bound unto Honorable Albert O. Howard _____ , Judge of Probate

of the aforesaid County, and his successors in office, in the penal sum of One Thousand Five Hundred and

00/100 _____ DOLLARS ($ 1,500.00 _____ ), for which payment, well and truly to be made and done, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents. And we waive in favor of this bond all right to claim any exemption of personal property allowed by the laws of the State of Alabama.

Sealed with our seals and dated this ___19th___ day of ___July___ , ___2004___ .

THE CONDITION OF THE ABOVE OBLIGATION IS SUCH, That Whereas, the above bound

Rosie Cliatt _____ ha___ been appointed as Administrator _____

in the above matter. Now, if the said Rosie Cliatt _____ shall well and truly

perform all the duties which are or may be required by law of Rosie Cliatt _____

as such fiduciar___ then the above obligation to be void; otherwise to remain in full force.

_____ (L.S.)
Principal

_____ (L.S.)

Countersigned by Alabama Resident Agent:

Name of Agent or Agency

The Starke Agency, Inc.

Street          City          State
210 Commerce St., Montgomery, AL.

WESTERN SURETY COMPANY

By _Paul T. Bruflat_____ (L.S.)
Senior Vice President

WESTERN SURETY COMPANY CORPORATE SEAL SOUTH DAKOTA

BENCH NOTE

Filed in the office of the Judge of Probate of _____ County, Alabama, taken, approved, and ordered to be recorded, this the _____ day of _____ , _____ .

_____
Judge of Probate

Bond (Executor, Administrator, Guardian)

Form 1310-A-4-2002

# Western Surety Company

## POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS:**

That WESTERN SURETY COMPANY, a corporation organized and existing under the laws of the State of South Dakota, and authorized and licensed to do business in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, and the United States of America, does hereby make, constitute and appoint

_____ Paul T. Bruflat _____ of _____ Sioux Falls _____ ,

State of _____ South Dakota _____ , its regularly elected _____ Senior Vice President _____ ,

as Attorney-in-Fact, with full power and authority hereby conferred upon him to sign, execute, acknowledge and deliver for and on its behalf as Surety and as its act and deed, all of the following classes of documents to-wit:

Indemnity, Surety and Undertakings that may be desired by contract, or may be given in any action or proceeding in any court of law or equity, policies indemnifying employers against loss or damage caused by the misconduct of their employees; official, bail, and surety and fidelity bonds in any and in all cases where indemnity may be lawfully given; and with full power and authority to execute consents and waivers to modify, or change or extend any bond or document executed for this Company, and to compromise and settle any and all claims or demands made or existing against said Company.

Western Surety Company further certifies that the following is a true and exact copy of Section 7 of the by-laws of Western Surety Company duly adopted and now in force, to-wit:

Section 7. All bonds, policies, undertakings, Powers of Attorney, or other obligations of the corporation shall be executed in the corporate name of the Company by the President, Secretary, any Assistant Secretary, Treasurer, or any Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary, any Assistant Secretary, or the Treasurer may appoint Attorneys-in-Fact or agents who shall have authority to issue bonds, policies, or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, undertakings, Powers of Attorney or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile.

In Witness Whereof, the said WESTERN SURETY COMPANY has caused these presents to be executed by its _____ Senior Vice President _____ with the corporate seal affixed this ____ 19th ____ day of _____ July _____ , ____ 2004 ____ .

ATTEST

_____ *L. Nelson* _____
**Assistant Secretary**

WESTERN SURETY COMPANY

By _____ *Paul T. Bruflat* _____
Paul T. Bruflat, Senior Vice President

STATE OF SOUTH DAKOTA }
}  ss
COUNTY OF MINNEHAHA }

On this ____ 19th ____ day of _____ July _____ , ____ 2004 ____ , before me, a Notary Public, personally appeared _____ Paul T. Bruflat _____ and _____ L. Nelson _____ who, being by me duly sworn, acknowledged that they signed the above Power of Attorney as _____ Senior Vice President _____ and Assistant Secretary, respectively, of the said WESTERN SURETY COMPANY, and acknowledged said instrument to be the voluntary act and deed of said Corporation.

+++++++++++++++++++
**D. KRELL**
(SEAL) **NOTARY PUBLIC** (SEAL)
**SOUTH DAKOTA**
+++++++++++++++++++
My Commission Expires November 30, 2006

_____ *D. Krell* _____
Notary Public

Form F1975-4-2002

**The Starke Agency, Inc.**
P. O. Box 4359
Montgomery, AL  36103-4359
Phone : 334-263-5535    Fax : 334-264-3375

| I N V O I C E # | | 56076 | Page 1 |
|---|---|---|---|
| **ACCOUNT NO.** | **OP** | **DATE** | |
| JURAL-1 | JP | 07/19/04 | |
| **Surety Bond** | | | |
| **POLICY #** | | | |
| 14608343 / ROSIE CLIATT | | | |
| **COMPANY** | | | |
| Western Surety Company | | | |
| **EFFECTIVE** | **EXPIRATION** | **BALANCE DUE ON** | |
| 07/19/04 | 07/19/07 | 07/19/04 | |

**Juraldine Battle-Hodge, Atty**
207 Montgomery St., Suite 215
Montgomery, AL  36104

| Itm # | Eff Date | Trn | Type | Description | Company | Amount |
|---|---|---|---|---|---|---|
| 180049 | 07/19/04 | NEW | SUR | Rosie Cliatt, Administrator | Western Surety Company | $   100.00 |

Est of Dontavious Cliatt - Filed in Russell County Probate
Office  $1500.00

Bond is considered a "One-time" charge.  Final release
signed by Judge of Probate is necessary to close file out.

If you have any questions concerning this invoice, please
contact Judy Payne at 334-387-4330.  Thank you.

|  |  |
|---|---|
| Invoice Balance: | $   100.00 |

# DIRECTIONS FOR FIDUCIARY

As an Executor, Administrator, Personal Representative, Guardian, Conservator, Trustee, Receiver or similar title, you are a fiduciary, entrusted with the care of someone else's property (trust).

The following DO's and DON'Ts are basic rules which you should follow to properly and conveniently perform your trust duties:

## DO

1.  **Use a checking account for all money paid out. Your cancelled checks are the best record of how you have spent the trust money.**

2.  **Keep an accurate record of all receipts and all disbursements. The form on the other side could help you.**

3.  **Obtain written Court approval before you pay out any substantial monies or dispose of any property.**

4.  **Consult with your attorney at all times. Help and advice are what you are paying for.**

5.  **Invest and manage assets of the estate as a prudent investor would, exercising reasonable care, skill and caution. On larger estates, it is wise to consult a professional investor.**

## DO NOT

1.  **Treat the property as your own, even if you are an heir or relative. It is not yours until the Court and the law says it is. Keep the property separate from yours. Not doing so could be a criminal offense.**

2.  **Spend any major amounts without the Court's written approval.**

3.  **Be afraid to ask your attorney for advice and guidance. It will help make the work easier for both of you.**

4.  **Delay in reporting to the Court. Follow your attorney's directions on signing papers and filing them with the Court.**

*IMPORTANT:   You can only be relieved of your fiduciary responsibilities by the court. Please consult with your attorney or the Court about obtaining a release when your duties are concluded.*

## REMEMBER:
### ASK FOR AND FOLLOW YOUR ATTORNEY'S ADVICE
### and
### DO NOT TREAT THE PROPERTY AS YOUR OWN

## CNA SURETY

### (OVER)

Form 1244-3-2000

# RECEIPTS

| DATE | RECEIVED FROM | FOR | Beginning Balance | AMOUNT | |
|------|---------------|-----|-------------------|--------|--|
| | | | | $ | |
| | | | | $ | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | Total Receipts | $ | |

# DISBURSEMENTS

| DATE | CHECK NO. | PAID TO | FOR | | |
|------|-----------|---------|-----|--|--|
| | | | | $ | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | Total Disbursements | $ | |
| | | | BALANCE | $ | |

**ADDITIONAL FORMS WILL BE FURNISHED UPON REQUEST**

# ALABAMA
## Center for Health Statistics

### ALABAMA
### CERTIFICATE OF DEATH

101 0003-015695

DECEDENT'S NAME: Dontavious Lamar CHATT
DATE OF DEATH: May 3, 2003
COUNTY OF DEATH: Russell

CITY, TOWN, OR LOCATION OF DEATH AND ZIP CODE: Phenix City 36867
INSIDE CITY LIMITS: Yes
PLACE OF DEATH: Southside Park-Sandhook Road

AGE: 21
DATE OF BIRTH: April 11, 1982
SEX: Male
RACE: Black
SOCIAL SECURITY NUMBER: 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

EDUCATION: 10th Grade
MARITAL STATUS: Never Married

STATE OF BIRTH: Florida
RESIDENCE-STATE: Alabama
COUNTY: Russell
CITY, TOWN, OR LOCATION AND ZIP CODE: Hurtsboro 36860

INSIDE CITY LIMITS: No
STREET AND NUMBER: Highway 51 North
INFORMANT: Ms. Rosie Chatt Highway 51 North, Hurtsboro AL 36860

USUAL OCCUPATION: Plant Worker
KIND OF BUSINESS: Water Works

FATHER-NAME: Gene Chatt
MOTHER: Rosie Holmes

DISPOSITION: Burial
DATE OF DISPOSITION: May 10, 2003
CEMETERY: St. Paul Cemetery
LOCATION: Hurtsboro, Alabama

FUNERAL HOME: Taylor Funeral Home
1514 5th Avenue, Phenix City, Al 36867
DATE SIGNED BY FUNERAL DIRECTOR: May 7, 2003

Certifying Physician / Medical Examiner / Coroner: Linda Key (Signature)
DATE SIGNED: May 19, 2003

TIME AND DATE OF DEATH: May 3, 2003
DATE AND TIME PRONOUNCED DEAD: May 3, 2003, 7:31 pm
NAME AND TITLE OF PERSON: Linda Key, Coroner

ADDRESS OF PERSON WHO COMPLETED CAUSE OF DEATH: P.O. Box 3377, Phenix City, Al 36867

REGISTRAR: Constance J. King
DATE FILED: May 19, 2003

### MEDICAL CERTIFICATION

IMMEDIATE CAUSE: Multiple Gunshot Wounds

HOW INJURY OCCURRED: Shot by another
MANNER OF DEATH: Homicide
AUTOPSY: Yes
DATE OF INJURY: May 3, 2003
HOUR OF INJURY: 6:45 pm

INJURY AT WORK: No
PLACE OF INJURY: Public Road
LOCATION OF INJURY: 2614 Sandfort Rd. Phenix City, Al.

This is a legal record and must be filed within five (5) days after death.

MAY 20 2003

I, Dorothy S. Harshbarger, State Registrar of Health Statistics, certify this is a true and exact copy of the original register filed in the Center for Health Statistics, State of Alabama, Department of Public Health, Montgomery, Alabama, and have caused the official seal of the Center for Health Statistics to be affixed. 2004-410-744-6

October 25, 2004

Dorothy S. Harshbarger, State Registrar