**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROSIE CLIATT, as Personal** | ) | |
| **Representative of the Estate of** | ) | |
| **DONTAVIUS CLIATT** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:06-cv-471-SRW [WO]** |
| **v.** | ) | |
| | ) | |
| **PHENIX CITY, ALABAMA, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT MARK WELLS'S BRIEF IN SUPPORT OF**
**MOTION TO DISMISS**

COMES NOW the Defendant, Mark Wells (hereafter, "Deputy Wells" or the "Defendant") and, in lieu of an answer, moves this Honorable Court to dismiss this action against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for Plaintiff's failure to state a claim upon which relief can be granted.  As grounds therefor, Defendant sets down and assigns the following:

1.      The Plaintiff's claims against Deputy Wells are due to be dismissed because violations of 42 U.S.C. § 1983 are barred by the applicable statute of limitations.

2.      The Plaintiff's claims against Deputy Wells are due to be dismissed for failure to properly plead such claims.

3.      The Plaintiff's claims against Deputy Wells are due to be dismissed because Deputy Wells, in his official capacity, is entitled to immunity pursuant to the Eleventh Amendment to the United States Constitution.

4.      The Plaintiff's claims against Deputy Wells are due to be dismissed because Deputy Wells is not a "person" for purposes of § 1983.

5.      The Plaintiff's Fourteenth Amendment § 1983 excessive force claims are due to be dismissed because the United States Supreme Court has held that such claims are properly analyzed only under the Fourth Amendment.

6.      The Plaintiff's Fourteenth Amendment § 1983 procedural due process claims are due to be dismissed because the United States Supreme Court has held that such claims are properly analyzed only under the Fourth Amendment.

7.      The Plaintiff's claims against Deputy Wells are due to be dismissed because Deputy Wells in entitled to qualified immunity.

## INTRODUCTION

The Plaintiff's claims stem from the death of Dontavius Cliatt (hereafter, the "Decedent")[1] resulting from gunfire which ensued after the Defendants in this action attempted to apprehend the Decedent for a murder committed earlier that day.  The Plaintiff, as personal representative of the Decedent's estate, has brought an action under 42 U.S.C. § 1983, claiming compensatory and punitive damages for alleged violations of the Decedent's Fourth and Fourteenth Amendment rights.

## STATEMENT OF FACTS[2]

At all times relevant to the incident underlying the Plaintiff's Complaint, Deputy Wells was acting under color of law as a police officer, and in such capacity, as the agent, servant and employee of Russell County, Alabama (Third Amended Complaint at ¶ 8.)

---

[1] Although the Plaintiff, in her Complaint, First Amended Complaint, and Second Amended Complaint, sometimes refers to Dontavius Cliatt as the "Plaintiff," this is obviously a drafting error, as the Plaintiff in this case is Rosie Cliatt, who is the personal representative of the estate of Mr. Cliatt.  (Third Amended Complaint at ¶ 6.)

[2] This Statement of Facts, and all facts alleged in this Motion, are for purposes of this Motion to Dismiss only, and are not intended to constitute an admission of any fact alleged by the Plaintiff.

On or about May 3, 2003, at approximately 6:30 p.m., the Decedent was the subject of a traffic stop in the vicinity of Southside Park on Safford Road in Phenix City, Alabama, which traffic stop was executed by, *inter alia*, Deputy Wells, who was acting as a Sheriff's Deputy of the Russell County, Alabama Sheriff's Department. Id. at ¶¶ 11, 13-14. The Decedent was a suspect in a homicide which had occurred earlier that day, and the vehicle which the Decedent was driving was suspected to have been involved in that homicide. Id. at ¶ 12. Because Deputy Wells knew that he was approaching a suspected armed suspect, and that a shooting incident might occur, Deputy Wells determined that additional police presence was required, and such help was requested via police radio. Id. at ¶¶ 14, 19. The Decedent was in the subject vehicle with his girlfriend, Denise Williams. Id. at ¶ 15. As Deputy Wells and the additional police officers approached the Decedent's vehicle, an exchange of gunfire ensued. Id. at ¶ 16. During that exchange of gunfire, the Decedent was shot and killed. Id. at ¶ 17.

## ARGUMENT

A Motion to Dismiss should be granted "when the allegations of the Complaint are viewed most strongly in the pleader's favor, it appears that the pleader could [not] prove any set of circumstances that would entitle [the pleader] to relief." Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993). See also, Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) (affirming District Court's grant of 12(b)(6) dismissal) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)) (Holding that a Motion to Dismiss will be granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). In reviewing a Motion to Dismiss, the court need only accept well-pleaded facts and reasonable inferences drawn from those facts, and is not required to accept unsupported conclusions of law or of mixed fact and law. Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir.

2003); <u>Marsh v. Butler County, Alabama</u>, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001).  <u>See also</u>

<u>South Florida Water Mgmt. Dist. v. Montalvo</u>, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting "as a

general rule, conclusory allegations and unwarranted deductions of fact are not admitted as true in a

Motion to Dismiss").  Further, the court "generally accord[s] . . . official conduct a presumption of

legitimacy."  <u>Id.</u>  Under this standard, the Plaintiff's Complaint, as a matter of law, fails to state a

claim against Deputy Wells.

 The Complaint, at least insofar as it relates to all of the Plaintiff's claims against Deputy

Wells, with the exception of the Fourth Amendment excessive force claim, contains little more than

conclusory allegations that cannot survive a Motion to Dismiss.  <u>See</u> <u>Aquatherm Industries, Inc. v.</u>

<u>Florida Power & Light Co.</u>, 145 F.3d 1258, 1261 (11th Cir. 1998) (affirming dismissal and

approving district court's reasoning that "vague, conclusory allegations are insufficient to state a

claim upon which relief can be granted").  "Pleadings must be something more than an ingenious

academic exercise in the conceivable."  <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1037 (11th Cir.

2001) (en banc) (citation omitted).

## I. THE PLAINTIFF'S CLAIMS AGAINST DEPUTY WELLS ARE DUE TO BE DISMISSED BECAUSE VIOLATIONS OF 42 U.S.C. § 1983 ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

 The law regarding the appropriate statute of limitations for filing actions arising under 42

U.S. C. § 1983 in the federal courts of Alabama is outlined by the United States District Court for

the Southern District of Alabama, Northern Division, in <u>Shows v. Morgan</u>, 40 F. Supp. 2d 1345

(M.D.Ala. March 17, 1999) as follows:

> Sections 1981 and 1983 do not have their own statutes of limitations. Instead, the
> limitations period is informed by state law, while the date of accrual is determined
> by federal law. *See Beasley v. Alabama State Univ.*, 966 F. Supp. 1117, 1128
> (M.D.Ala.1997) (Thompson, J.). Given the broad scope of § 1983, and the lack of
> precise state-law analogs to the diverse claims brought under its aegis, the Supreme
> Court concluded that, " where state law provides multiple statutes of limitations for

personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions," *Owens v. Okure*, 488 U.S. 235, 249-250, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989), so that "potential § 1983 plaintiffs and defendants ... can readily ascertain, with little risk of confusion or unpredictability, the applicable limitations period." *Id.* at 248, 109 S.Ct. at 580. All § 1983 actions commenced in Alabama are subject to the two-year limitations period set forth in the general provisions of the 1975 Code of Alabama § 6-2-38. *See Lufkin v. McCallum*, 956 F.2d 1104, 1106 (11th Cir.1992); *see also Okure*, 488 U.S. at 246 n. 9, 109 S.Ct. at 580 n. 9. Under federal law, accrual occurs "'the moment the plaintiff knows or has reason to know of the injury that is the basis of [the] complaint.'" *Beasley*, 966 F. Supp. at 1128 (quoting *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir.1987)).

Shows, 40 F. Supp. 2d at 1362.

In United States v. Kubrick, a medical malpractice case, the United States Supreme Court clearly enunciated its position on the inviolability of statutes of limitations involving federal claims:

Statutes of limitations, which "are found and approved in all systems of enlightened jurisprudence," *Wood v. Carpenter*, 101 U.S. 135, 139, 25 L.Ed. 807 (1879), represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that "the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). These enactments are statutes of repose; and although affording plaintiffs what the legislature deems a reasonable time to present their claims, they protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise. *United States v. Marion*, 404 U.S. 307, 322, n. 14, 92 S.Ct. 455, 464, n. 14, 30 L.Ed.2d 468 (1971); *Burnett v. New York Central R. Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965); *Chase Securities Corp. v. Donaldson*, 325 U.S. 304, 314, 65 S.Ct. 1137, 1142, 89 L.Ed. 1628 (1945); *Missouri K. & T. R. Co. v. Harriman*, 227 U.S. 657, 672, 33 S.Ct. 397, 401, 57 L.Ed. 690 (1913); *Bell v. Morrison*, 1 Pet. 351, 360, 7 L.Ed. 174 (1828).

Section 2401(b), the limitations provision involved here, is the balance struck by Congress in the context of tort claims against the Government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims. *Campbell v. Haverhill*, 155 U.S. 610, 617, 39 L.Ed. 280 (1895); *Bell v. Morrison*, *supra*, at 360. We should regard the plea of limitations as a "meritorious defense, in itself serving a public interest." *Guaranty Trust Co. v. United States*, 304 U.S. 126, 136, 58 S.Ct. 785, 790, 82 L.Ed. 1224 (1938).

. . .

A plaintiff [], armed with the facts about the harm done to him, can protect himself by seeking advice in the [] legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government. . . . If advised that he has been wronged, he may promptly bring suit. If competently advised to the contrary, he may be dissuaded, as he should be, from pressing a baseless claim. Of course, he may be incompetently advised. . . . But however or even whether he is advised, the putative [] plaintiff must determine within the period of limitations whether to sue or not, which is precisely the judgment that other tort claimants must make. If he fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit, even though more than two years have passed from the plaintiff's discovery of the relevant facts about injury.

. . .

It goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose, and they remain as ubiquitous as the statutory rights or other rights to which they are attached or are applicable.

U. S. v. Kubrick, 444 U.S. 111, 117-25 (1979).

The statute of limitations applicable to the Plaintiff's § 1983 claims is two years. Jones v. Preuit & Mauldin, 876 F.2d 1480, 1483 (11th Cir. 1989). However, "when a § 1983 action accrues is a question of federal law." Mullinax v. McElhenney, 817 F.2d 711, 716 (11th Cir. 1987). "The statute of limitations does not begin to run until the facts that would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Porter v. Ray, 461 F.3d 1315, 1323 (11th Cir. 2006) (quoting Lovett v. Ray, 327 F.3d 1181, 1182 (11th Cir. 2003)).

"Thus, Section 1983 actions do not accrue until the plaintiff knows or has reason to know that he has been injured. *Calhoun*, 705 F.2d at 424; *Rubin*, 621 F.2d at 116, *Lavellee*, 611 F.2d at 1131. Nor will a Section 1983 action accrue until the plaintiff is aware or should have been aware who has inflicted the injury. *Lavellee*, 611 F.2d at 1131 (quoting *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)).

Mullinax, 817 F.2d at 716.

Initially, it is axiomatic that a personal representative stands in the shoes of the decedent. As a result, all defenses that apply to the decedent apply to the personal representative. Ex parte Adams, 113 So. 235, 236 (Ala. 1927). A statute of limitations should not be extended simply due to the fact that a personal representative is bringing suit, since the representative is limited to maintaining the same action that the decedent could have maintained for personal injury had he lived. Id.

In Masselli v. Silverman, another case brought pursuant to 42 U.S.C. § 1983, the Plaintiff brought suit alleging that Defendants had caused decedent's death when he was murdered while working as an informant, in violation of due process of law, after the Defendants revealed information resulting in decedent's death. 606 F. Supp. 341 (S.D.N.Y. 1985). The court, in dicta, stated that accrual did not occur until the decedent was murdered. Obviously, the decedent in Masselli suffered no violation of his Constitutional rights until the day he was murdered thereby justifying accrual on the date of death. Similarly, in this case, the decedent's civil rights were allegedly violated on the day of his death, and the Plaintiff's cause of action accrued on that date.

Further, a plaintiff does not have to have **all** of the relevant facts, nor know the **specific identities** of the appropriate defendants, in order for the statute of limitations to accrue. A Second Circuit case, Paige v. Police Dep't of the City of Schenectady, 264 F.3d 197 (2nd Cir. 2001), is instructive. In Paige, the Plaintiff alleged that she was the victim of a sexual assault by a police officer twenty years prior to the lawsuit, while she was still a minor. Paige, 264 F.3d at 198. Although she did not know the police officer's name, the Plaintiff reported the assault and related the description of her assailant and the number of his patrol car. Id. The Defendant police department informed the Plaintiff that there was insufficient evidence to pursue her case, and that no

investigative file for the case existed; however, there was in fact an investigative file which had

identified the offending officer. Id. at 198-99. Fifteen years later, the Plaintiff found out from a

newspaper reporter that her assailant had been identified by name. Id. at 199. The Plaintiff then

brought a § 1983 action against the officer, the police department, and the city, alleging the facts of

the assault committed nearly fifteen years earlier. Id. The Defendants moved for Summary

Judgment based on the statute of limitations. Id. The Plaintiff argued that the claims were not time-

barred because they did not accrue until she discovered the identity of her assailant from the

newspaper article. Id.

The District Court granted Summary Judgment for the Defendants, ruling that the statute of

limitations for the Plaintiff's claims accrued on the date the Plaintiff reached the age of majority –

more than ten years prior to the institution of her action. Id. The District Court also held that (1) the

Plaintiff did not exercise due diligence in pursuit of the police file concerning the incident, and that

(2) the Plaintiff had sufficient knowledge to commence her action even without that police file. Id.

"Paige knew of sufficient facts, or with due diligence could have secured such knowledge, in order

to commence a suit based upon her . . . causes of action well within the applicable statutes of

limitations. *Paige v. Police Dep't*, 121 F.Supp.2d 723, 729 (N.D.N.Y. 2000)." Id. The Plaintiff

appealed. Id.

The Court of Appeals for the Second Circuit agreed with the District Court that the Plaintiff

had sufficient information when she reached the age of majority to bring her § 1983 assault claim,

and therefore her claim was time-barred. Id.

> Because Paige clearly has known of the assault since 1981, this claim necessarily
> accrued on or before her majority in 1986. *See Veal v. Geraci*, 23 F.3d 722, 724 (2d
> Cir.1994) (holding that a § 1983 claim accrues "when the alleged conduct has
> caused the claimant harm and the claimant knows or has reason to know of the
> allegedly impermissible conduct and the resulting harm"). Moreover, the alleged
> fraudulent concealment by the Defendants in this case cannot serve to toll

Appellant's assault claims under the doctrine of equitable tolling because the concealment did not deprive appellant of the information that she needed to bring a § 1983 suit charging assault. *See Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir.1995) ("[W]hen a 'defendant fraudulently conceals the wrong, the time [limit of the statute of limitations] does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action.' " (alteration in the original) (quoting *Keating v. Carey*, 706 F.2d 377, 382 (2d Cir.1983))). Although some of the facts putatively concealed by the Defendants might have strengthened Paige's case by corroborating her story, we find that the absence of those facts did not sufficiently justify Paige in not pursuing her cause of action as to merit equitable tolling. The statute of limitations for the assault claim therefore expired in 1989, three years after Paige's eighteenth birthday.

Id. at 199-200.  See also, Chappell v. Rich, 340 F.3d 1279, 1283-84 (11th Cir. 2003) (holding that the Plaintiffs' suit was barred by the statute of limitations because the Plaintiffs knew that their mother had been murdered and who the alleged perpetrators were, and although access to evidence concealed by the police department may have strengthened their case, the Plaintiffs had not alleged that they were prevented from filing suit within the applicable statute of limitations.)[3]

It is undisputed by the parties that the alleged violation of 42 U.S.C. § 1983 in the Plaintiff's Complaints occurred on May 3, 2003.  It is also undisputed that the Plaintiff was aware of the injury to the Decedent (death) no later than November 4, 2004.  (See, Decree Granting Letters of Administration, Exhibit B to the Complaint.)  Plaintiff states in her Complaint that the Decedent was pulled over by the Russell County Sheriff's Department, specifically Deputy Wells and Deputy Fetty.  (Complaint at ¶ 14.)  Plaintiff further states in her Complaint that the Decedent was "in the subject automobile with his girlfriend, Ms. Denise Williams at the time of the traffic stop."  Id. at ¶ 15.  A person with a reasonably prudent regard for his rights would have known, or should have known, who inflicted the injury.  There was undoubtedly print and broadcast media coverage of both the Decedent's shooting and the murder for which the Decedent was a suspect.  The internet can provide a wealth of information for any plaintiff with due regard for their rights.  The United

States Congress has provided a Freedom of Information Act (5 U.S.C. § 552) for obtaining just such relevant information.

However, most importantly, there was an eyewitness to the entire event – the Decedent's girlfriend, Ms. Denise Williams, who was in the car with the Decedent when he was allegedly shot. Ms. Williams saw the officers. She saw the color and style of their uniforms. She saw the color and style of their cars. It is reasonable to assume that she was interviewed as a witness. Surely the slightest exercise of due diligence on the part of the Plaintiff would have allowed her to ascertain from Ms. Williams, or any one of the above sources, the Defendant's identity, or at least sufficient information with which to state her cause of action within the applicable limitations period.

Finally, if all else fails, the Plaintiff had recourse to the procedures provided for in Rules 27 and 34 of the Federal Rules of Civil Procedure. Rule 27 states, in relevant part, as follows:

> A person who desires to perpetuate testimony regarding any matter that may be cognizable in any court of the United States may file a verified petition in the United States district court in the district of the residence of any expected party. The petition shall be entitled in the name of the petitioner and shall show: 1, that the petitioner expects to be a party to an action cognizable in a court of the United States but is presently unable to bring it or cause it to be brought, 2, the subject matter of the expected action and the petitioner's interest therein, 3, the facts which the petitioner desires to establish by the proposed testimony and the reasons for desiring to perpetuate it, 4, the names or a description of the persons the petitioner expects will be adverse parties and their addresses so far as known, and 5, the names and addresses of the persons to be examined and the substance of the testimony which the petitioner expects to elicit from each, and shall ask for an order authorizing the petitioner to take the deposition of the persons to be examined named in the petition, for the purpose of perpetuating their testimony.

Fed. R. Civ. P. 27(a) (emphases added). Had the Plaintiff utilized this procedure, she could easily have obtained the testimony of, at the very least, the Chief of Police of Phenix City, a named Defendant in this case, and the Sheriff of Russell County. Said testimony would or could have revealed the identities of the individuals subsequently, but belatedly, named in the Complaints.

---

[3] Note that in <u>Chappell</u>, the Eleventh Circuit placed the burden on the Plaintiffs to allege that they could not have

Rule 34 states, in relevant part, as follows:  "A person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45." F. R. Civ. P. 34(c).  "In the 1970 amendments to rule 34 the drafters recognized that rule 34, as revised, continued to apply only to parties. However, they did note that subdivision 34(c) 'does not preclude independent actions for discovery against persons not parties.' *See*, Notes of Advisory Committee on Rules, Fed. R. Civ. P. 34(c)."  <u>Lubrin v. Hess Oil Virgin Islands Corp.</u>, 109 F.R.D. 403, 405 (D.C. V.I. 1986).  The Lubrin court went on to say:

> We note that a number of District Courts have reached the same conclusion and have recognized that rule 34(c), although not authorizing a court to order discovery of a nonparty, does not prohibit an independent action to obtain discovery. *Reilly Tar Corp. v. Burlington N.R. Co.*, 589 F. Supp. 275, 278-79 (D.Minn.1984) (case dismissed for lack of jurisdiction, however, the court was of the opinion that ancillary jurisdiction may properly be exercised in a discovery action seeking inspection of a nonparty's land if the facts of a particular case so warrant); *Wimes v. Eaton Corp.*, 573 F. Supp. 331 (E.D.Wis.1983); *Huynh v. Werke*, 90 F.R.D, 447, 450 (S.D.Ohio 1981). *Home Ins. Co. v. First Nat. Bank*, 89 F.R.D. 485, (N.D.Ga.1980). Most of these courts have characterized this independent action as similar to the antiquated instrument called an equitable bill of discovery. *Reilly Tar Corp.*, at 278; *Wimes*, at 333-34; *Homes Ins. Co.*, at 488-89. This mechanism was used as the primary means of discovery prior to the advent of the Federal Rules of Civil Procedure in 1938. *Wimes*, 573 F. Supp. at 333-34. Although Lubrin did not style his complaint as an equitable bill for discovery, he does request equitable injunctive relief seeking the equivalent result. We therefore find our result in accordance with the few decisions which exist on this subject.

<u>Id.</u>  Accordingly, the Plaintiff in this action could have brought an independent, equitable action for against either the Phenix City Police Department, the Russell County Sheriff's Department, or both, to obtain the information necessary to bring the current action within the applicable statute of limitations.  In short, the Plaintiff had two procedural avenues available to her for the discovery of the information necessary for her to bring this action, and she did not choose to avail herself of either procedure.  Had she done so, she would have known – she *should* have known – who the proper Defendants were well within the applicable statute of limitations.

---

filed suit within the appropriate statutes of limitations.  <u>Accord</u>, <u>Hosea v. Langley</u>, *infra*.

The Plaintiff's first Complaint was filed on May 25, 2006 – some three years after the alleged violation.  The Plaintiff waited a full additional year beyond the close of the two year statute of limitations to file her Complaint.  Further, the Plaintiff's First Amended Complaint – in which she first names Deputy Wells – was not filed until December 6, 2006; an additional six months after her original Complaint was filed, and more than three years and eight months after the incident forming the basis of the action.  While there is a "discovery rule," it is employed when a plaintiff has no knowledge of any injury.  See Kubrick, 444 U.S. 111 (1979).  The Plaintiff obviously knew of the Decedent's death shortly after it happened.  Additionally, that rule implies a reasonable amount of due diligence by referencing when a plaintiff "should have known" of the fact of the injury, and the identity of the defendants.  Otherwise, the plaintiff need not initiate any inquiry whatsoever, and would be free to sue at any time within two years from the arbitrary time she receives information, or perhaps forms some independent opinion, as to who caused the alleged injury.  See Kubrick, 444 U.S. at 119.

Judge Steele, in the United States District Court for the Southern District of Alabama, was directly on point in his recent decision in Hosea v. Langley.

> To the extent that plaintiffs would invoke the so-called "discovery rule," their argument must fail. It is true that the limitations period in § 1983 actions does not begin to run until facts which support the claim are or should be apparent to a person with reasonably prudent regard for his rights, and that § 1983 actions do not accrue until the plaintiff knows or should know both that he has been injured and the identity of the person(s) responsible. *See Mullinax*, 817 F.2d at 716; *Ashcroft v. Randel*, 391 F. Supp. 2d 1214, 1219-20 (N.D.Ga.2005) ("The statute of limitations clock begins to run when the facts which support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."). But Plaintiffs have not come forward with any evidence suggesting any discontinuity or delay between the occurrence of the alleged wrongful acts in January and early February 2002, and Plaintiffs' recognition that they had been injured and that Defendants were responsible. Indeed, Plaintiffs witnessed the alleged wrongful acts firsthand, so any suggestion of lack of awareness would flirt with frivolity. The discovery rule cannot expand the scope of Plaintiffs' federal claims against the Sheriff's Defendants beyond the two-year period.

<u>Hosea v. Langley</u>, No. Civ. A. 04-0605-WS-C, 2006 WL 314454, at *18, n.52 (S.D.Ala., February 8, 2006). In fact, the Eleventh Circuit affirmed that decision on appeal, relying solely on Judge Steele's analysis. <u>Hosea v. Langley</u>, No. 06-11784, 2007 WL 295581, at *1 (Ala. February 02, 2007) ("The judgment of the district court is affirmed on the basis of that court's painstakingly thorough and well-reasoned order of February 7, 2006.")

Plaintiff has not alleged any sort of continuing tort, or any illegal or improper conduct by Deputy Wells or the Russell County Sheriff's Department which prevented the Plaintiff from timely obtaining relevant information, or any other grounds for tolling the applicable statute of limitations in the Complaint. Therefore, her claims against Deputy Wells are due to be dismissed because they are barred by the statute of limitations.

## II.    THE PLAINTIFF'S CLAIMS BASED ON 42 U.S.C. § 1983 ARE DUE TO BE DISMISSED FOR FAILURE TO PROPERLY PLEAD SUCH CLAIMS.

Under federal case law, in cases involving allegations of civil rights violations, and which implicate the defense of qualified immunity, the plaintiff is required to allege the relevant facts with some amount of specificity.

> In examining the factual allegations of the Complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity. <u>GJR Investments, Inc. v. County of Escambia</u>, 132 F.3d 1359, 1367 (11th Cir. 1998). In such cases, the Complaint must allege the relevant facts "with some specificity." <u>Id</u>. "More than mere conclusory notice pleading is required. . . . [A] Complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." <u>Fullman v. Graddick</u>, 739 F.2d 553, 556-57 (11th Cir. 1984); see also <u>Veney v. Hogan</u>, 70 F.3d 917, 922 (6th Cir. 1995) (holding that Complaint must "include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity"). . . . We must also keep in mind the fact that "we generally accord . . . official conduct a presumption of legitimacy." <u>United States Dep't of State v. Ray</u>, 502 U.S. 164, 179, 112 S.Ct. 541, 550, 116 L.Ed. 2d 526 (1991).

Dalrymple v. Reno, 334 F.3d 991 (11th Cir. 2003). See also, Gonzalez v. Reno, 325 F.3d 1228 (11th Cir. 2003); Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001); Swann v. Southern Health Partners, Inc., 338 F.3d 834, 838 (11th Cir. 2004).

The allegations contained in Plaintiff's Complaint, First Amended Complaint and Second Amended Complaint contain merely vague assertions, i.e. conclusory notice pleading, and omits potentially critical details. For instance, while the Plaintiff claims that the Decedent did not initially fire upon the Defendants, but only exchanged fire when fired upon, for some unexplained reason the Defendants determined that additional police back-up was necessary and radioed for help, and after the back-up officers arrived, all of the officers approached the vehicle and unaccountably opened fire on the Decedent. Why did the Defendants determine that police back-up was necessary? Why did the Defendants fire on the Decedent, if the Decedent did not threaten them, and was not a threat to the passenger in the car? The Complaints (collectively) give no indication to this Court whether or why the Defendant Officers' use of force was excessive – precisely the reason for the heightened pleading standard. For this reason, the Plaintiff's § 1983 claims are due to be dismissed.

## III. THE PLAINTIFF'S CLAIMS AGAINST DEPUTY WELLS ARE DUE TO BE DISMISSED BECAUSE DEPUTY WELLS, IN HIS OFFICIAL CAPACITY, IS ENTITLED TO IMMUNITY PURSUANT TO THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

It is clear that the Plaintiff is suing Deputy Wells in his official capacity. Generally, when determining the capacity in which a governmental employee is sued, the court looks "at the Complaint and the course of proceedings." Colvin v. McDougall, 62 F.3d 1316, 1317 (11th Cir. 1995). According to Federal Rule of Civil Procedure 8(a), a Complaint must contain, "1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, 2) a short and plain statement of the claim showing that the pleader is entitled to relief, and 3) a demand for

judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a). In this case, those portions of the Complaints which purport to state the claims against Deputy Wells do specifically address the capacity in which he is sued. It says these words about capacity: "At all times relevant hereto and in all actions described herein, all Defendant officers and deputies were acting under color of law as police officers, and in such capacity, as agents, servants and employees of PHENIX CITY, ALABAMA, and RUSSELL COUNTY, ALABAMA." (Plaintiff's Second Amended Complaint at ¶ 8.) Further, in her claims against Deputy Wells, the Plaintiff alleges that his actions were "in the furtherance of [his] duties." Id. at ¶ 25. In her statement of proximate cause, the Plaintiff alleges that Deputy Wells was acting as an "agent[], servant[] or employee[] of Defendant, CITY and COUNTY." Id. at ¶ 30. Finally, Plaintiff clearly alleges that Deputy Wells was acting "in [his] capacity as police officer[] and under Color of Law." Id. at ¶ 42. In light of these claims, it is undisputable that Plaintiff is suing Deputy Wells in his official capacity.

The Plaintiff's official capacity claims against Deputy Wells are due to be dismissed for lack of subject matter jurisdiction. Deputy Wells, in his capacity as deputy sheriff, is an executive officer of the State of Alabama. Therefore, a suit against Deputy Wells, in his official capacity, is a suit against the State of Alabama. See Hafer, 502 U.S. at 25; Lancaster, 116 F.3d at 1429; see also Kentucky v. Graham, 473 U.S. at 165-66. Because this suit is, in effect, a suit against the State of Alabama, the Eleventh Amendment to the United States Constitution bars the Plaintiff's claims under § 1983. See Free, 887 F.2d at 1557; see also Dean v. Barber, 951 F.2d 1210, 1215 n.5 (11th Cir. 1992); Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990) (citing Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) and upholding the proposition that a deputy sued in his official capacity is entitled to Eleventh Amendment immunity). Thus, this Court lacks subject matter jurisdiction over these claims against Deputy Wells.

IV.  **THE PLAINTIFF'S CLAIMS AGAINST DEPUTY WELLS ARE DUE TO BE DISMISSED BECAUSE DEPUTY WELLS IS NOT A "PERSON" FOR PURPOSES OF § 1983.**

42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983.  The United States Supreme Court has held that a state official sued in his or her official capacity, is not a "person" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  As pointed out above, Plaintiff has plainly sued Deputy Wells in his official capacity.  Thus, any claims against Deputy Wells, in his official capacity, are due to be dismissed because Deputy Wells is not a "person" under § 1983, and therefore, these claims fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3 (citing Will and noting that, in addition to entitlement to Eleventh Amendment immunity, "neither a State nor its officials acting in their official capacities are a 'person' under § 1983").

V.  **THE PLAINTIFF'S FOURTEENTH AMENDMENT § 1983 EXCESSIVE FORCE CLAIMS ARE DUE TO BE DISMISSED BECAUSE THE UNITED STATES SUPREME COURT HAS HELD THAT SUCH CLAIMS ARE PROPERLY ANALYZED ONLY UNDER THE FOURTH AMENDMENT.**

The Plaintiff's Fourteenth Amendment excessive force and due process claims fail to state a claim upon which relief can be granted as a matter of law.  This result is mandated by the United States Supreme Court's line of cases requiring that the first step in evaluating a § 1983 claim is to "identify the specific Constitutional right allegedly infringed."  Albright v. Oliver, 510 U.S. 266, 271 (1994) (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).  Here, the Plaintiff's Fourteenth Amendment claims are due to be dismissed because the Fourth Amendment provides the proper framework for analyzing the Plaintiff's excessive force claims.

Although the Complaint, First Amended Complaint and Second Amended Complaint are unclear as to exactly which causes of action are being asserted against which Defendants, the

Plaintiff has potentially pled two Fourteenth Amendment claims against Deputy Wells: (1) excessive force; and (2) violation of due process. Under crystal clear United States Supreme Court and Eleventh Circuit precedent, the excessive force claim is due to be dismissed. As a matter of law, the Plaintiff cannot maintain an excessive force claim under the Fourteenth Amendment. "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person." <u>Graham</u>, 490 U.S. at 394 (citation omitted). Consequently, Deputy Wells is entitled to a dismissal of the Plaintiff's Fourteenth Amendment excessive force claims.

## VI.   THE PLAINTIFF'S FOURTEENTH AMENDMENT § 1983 PROCEDURAL DUE PROCESS CLAIMS ARE DUE TO BE DISMISSED BECAUSE THE UNITED STATES SUPREME COURT HAS HELD THAT SUCH CLAIMS ARE PROPERLY ANALYZED ONLY UNDER THE FOURTH AMENDMENT.

As stated above, the Plaintiff has potentially pled two Fourteenth Amendment claims against Deputy Wells: (1) excessive force; and (2) violation of due process. Under clear United States Supreme Court and Eleventh Circuit precedent, the procedural due process claim is likewise due to be dismissed, because as a matter of law, the Plaintiff cannot maintain a procedural due process claim under the Fourteenth Amendment. Dispositive of this issue, the Supreme Court has held:

> *all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

<u>Graham</u>, 490 U.S. at 395 (emphasis in the original, footnote omitted).

In light of the Supreme Court's unambiguous holding in <u>Graham</u>, the Plaintiff's Fourteenth

Amendment procedural due process claims must be dismissed.

**VII.   THE PLAINTIFF'S CLAIMS AGAINST DEPUTY WELLS ARE DUE TO BE DISMISSED BECAUSE DEPUTY WELLS IN ENTITLED TO QUALIFIED IMMUNITY.**

As set forth above, it is clear that the Plaintiff is suing Deputy Wells in his official capacity, and not in his individual capacity.  Specifically, the Complaints' "statement of claim" required by Fed. R. Civ. P. 8(a) – specifically the allegations concerning the parties, the facts and the causes of action -- do not purport to make a claim against Deputy Wells in his individual capacity.  [I]n general, "plaintiffs have a duty to make plain who they are suing" [and in what capacity].  Colvin v. McDougal, 62 F.3d 1316, 1318 (11th Cir. 1995).

The captions to the First Amended Complaint and Second Amended Complaint contain these words: "RUSSELL COUNTY ALABAMA DEPUTIES MARK WELLS, AND ERIC FETTY, Individually and Jointly and Severally."  But that caption is completely insufficient to state a claim against a defendant in his individual capacity.

> [T]he caption of the Complaint is not part of the statement of the claim under Rule 8. The caption is something apart, being mandated by a different rule: Fed. R. Civ. P. 10. The caption is chiefly for the court's administrative convenience. It may, however, sometimes be useful to look at the caption - when the Rule 8 statement of a claim is ambiguous about a party's capacity-to settle pleading ambiguities. *See Hobbs v. E.E. Roberts*, 999 F.2d 1526, 1529-30 (11th Cir.1993) (using several factors, including caption, to resolve ambiguity of whether official sued in official or individual capacity). To use the Rule 10 caption to create an ambiguity when the statement of the claim is itself not ambiguous is incorrect.

Marsh v. Butler County, Ala., 268 F.3d 1014, 1024, n.4 (11th Cir. 2001).

Nevertheless, out of an abundance of caution, and without waiving the argument that the Complaint clearly indicates that Deputy Wells is being sued in his official capacity only, should this Court determine that a claim has been made against Deputy Wells in his individual capacity, he would be entitled to qualified immunity.

Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir. 1991). The Eleventh Circuit Court of Appeals has observed, "[t]hat qualified immunity protects governmental actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." Lassiter v. Alabama A & M Univ., 28 F.3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted). In the light of pre-existing law the unlawfulness must be apparent. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Mere statements of broad legal truisms, without more, are not sufficient to overcome qualified immunity. Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993).

Once a defendant has asserted the defense of qualified immunity, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a Constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a Constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a Constitutional violation is stated, were these rights "clearly established" to the degree that the defendant had "fair warning" that his/her conduct violated the plaintiff's Constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of this Defendant was clearly established as being violative of Constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A Constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster v. Monroe County, 116 F.3d 1419, 1424 (11th Cir. 1997). "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by

decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Board of Education, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

The Plaintiff alleges that Deputy Wells (a) executed an unconstitutional seizure of the Decedent, resulting in his death, in violation of his Fourth Amendment rights (Second Amended Complaint at ¶¶ 25 and 29); and (b) employed excessive force against the Decedent, resulting in his death, in violation of his Fourth and Fourteenth Amendment rights (Second Amended Complaint at ¶¶ 39, 40 and 42). Plaintiff's claims are due to be dismissed because the facts as pled in the Complaints (collectively) do not establish that Deputy Wells violated the Decedent's Constitutional rights, or that established law put Deputy Wells on notice that his actions were unconstitutional.

### A.    Deputy Wells did not violate the Decedent's Constitutional rights.

The Decedent did not have a Constitutional right to be absolutely free from the use of any force when being detained and arrested as a suspect for murder. The Supreme Court has established that, in order to balance the necessity of using some force attendant to an arrest against the arrestee's Constitutional rights, a court must evaluate a number of factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386 (1989). The Eleventh and Third Circuit Courts of Appeal have also considered "other relevant factors including the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of affecting an arrest, the possibility that the suspect may be armed, and the number of persons with who the police officers must contend at one time." Crosby v. Paulk, 187 F.3d 1339, 1351 (11th Cir. 1999) (quoting Sharrar v. Felsing, 128 F.3d 810, 822 (3rd Cir. 1997).

In the case at bar, Deputy Wells had reliable information from a trustworthy source that the Decedent was "a suspect in a homicide which had occurred earlier [that day], and the vehicle which [the Decedent] was driving was suspected to have been involved in said homicide." (Second Amended Complaint at ¶ 12.) The Decedent was obviously armed, inasmuch as he fired upon the Defendant police officers. Id. at ¶¶ 16, 42. There was another occupant in the car – the Decedent's girlfriend, Denise Williams. Id. at ¶¶ 16, 42. The officers at that time did not know if that occupant was an accomplice of the Decedent, or perhaps a hostage. Given the foregoing facts, as pled in the Plaintiff's Complaints, Deputy Wells had every reason to believe that the situation was very serious indeed. Those factors also argue strongly in favor of Deputy Wells's possible conclusion that the Decedent posed an immediate threat to him, to the other officers, and possibly the other occupant of the vehicle. Further, the situation unfolded in just a few moments, giving the Defendant little time to weigh his options and evaluate all the potential outcomes.

The United States Supreme Court has held that the courts are "loath to second-guess the decisions made by police officers in the field." Vaughan v. Cox, 343 F.3d 1323, 1331 (11th Cir. 2003); Graham v. Connor, 490 U.S. 386, 396-97 (1989).

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396-97. See also, Carr v. Tatangelo, 338 F.3d 1259, 1267-68 (11th Cir. 2003). This reluctance to second-guess the decisions of police officers is wise, in that it permits those officers to better protect themselves and the public without unnecessary concern for personal liability from frivolous lawsuits such as this one.

**B.      No clearly established law gave Deputy Wells fair warning that his conduct was unlawful.**

The Plaintiff must show that clearly established law provided Deputy Wells with fair warning that his conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or a federal constitutional provision is specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that Deputy Wells's conduct was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

The United States Supreme Court has established and settled the Constitutional standard for the use of lethal force in the well-known case Tennessee v. Garner, as follows:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not Constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

Tennessee v. Garner, 471 U.S. 1, 11-12 (1985).

As set forth above, and as alleged in the Plaintiff's complaints, Deputy Wells had probable cause to believe that the Decedent had committed a homicide earlier that day, and thus posed a threat of serious physical harm to the Defendant, the other officers, the passenger in the car, and the public at large.  It is undisputed, and alleged in the Complaints, that the Decedent was suspected of

murder, and that suspicion is the very reason that the Decedent was detained. It is undisputed, and alleged in the Complaints, that the Decedent was armed. It is undisputed, and alleged in the Complaints, that he fired upon the Defendants. The Plaintiff alleges that the officers shot first, and that the Decedent only returned fire. However, nothing in <u>Garner</u> – indeed, nothing in any relevant legal precedent – requires the defendant officers to allow a suspect to shoot first before employing deadly force. Therefore, under <u>Tennessee v. Garner</u> – the relevant legal authority establishing the law in this area – Deputy Wells had no notice that using deadly force on the Decedent would be an unconstitutional act. Accordingly, Deputy Wells is entitled to qualified immunity, and the Plaintiff's § 1983 claims must be dismissed.

WHEREFORE, ABOVE PREMISES CONSIDERED, Defendant Mark Wells, moves this Honorable Court to dismiss this action against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

Respectfully submitted, this 26th day of February, 2007.

**s/Scott W. Gosnell**
KENDRICK E. WEBB – Bar. No. WEB022
SCOTT W. GOSNELL – Bar No. GOS002
Attorney for Defendant
WEBB & ELEY, P.C.
7475 Halcyon Pointe Road (36117)
Post Office Box 240909
Montgomery, Alabama 36124
Telephone: (334) 262-1850
Fax: (334) 262-1889
E-mail: sgosnell@webbeley.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 26th day of February, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Faulton B. Eaglin
LAW OFFICES OF FULTON B. EAGLIN
220 E. Huron
Suite 210
Ann Arbor, MI 48104
Telephone:  (734) 665-5355
Fax: (734) 665-0911
Email:  fbeaglin@aol.com

James Robert McKoon, Jr.
McKoon & Thomas
P.O. Box 3220
Phenix City, AL 36868-3220
Telephone: (334) 297-2300
Fax: (334) 297-2777
Email: jrmckoon@aol.com

**s/Scott W. Gosnell**
OF COUNSEL