# Exhibit F

# Report from Phenix City Police Captain J. Hart to Phenix City Police Chief P. Robinson dated May 23, 2003

May 23, 2003

To:      Chief P. Robinson
From:    Captain J. Hart

Ref:      03PL12653

Complainant(s): Department initiated
Officer(s):      Lt. Patrick Daughtry
              Cpl. Jarrod Barr
              Cpl. David Reeves
              Off. Chris Brennan
              Off. Darius Farley

## SYNOPSIS OF EVENT/COMPLAINT

On May 03, 2003, at approximately 1830 hours, the above mentioned officers responded to a request for back-up from Russell County Deputy Marc Wells. Deputy Wells had stopped a vehicle on Sandfort Rd (2814) based on a BOLO issued about an hour earlier by the PCPD ( a silver four-door Saturn occuppied by one black male and one black female). The BOLO was a suspect/vehicle description issued in reference to a robbery/homicide that occurred earlier in the day in Phenix City (see 03PL12645). All five PCPD officers arrived on the scene at approximately the same time and all became involved in a firefight with the black male occupant of the Saturn (subsequently identified as Dontavius Cliatt). As a result of the firefight, Mr. Cliatt was mortally wounded, no other injuries were sustained at the scene. This internal investigation is to determine if proper procedure(s) was followed by the involved officers of the PCPD.

## STATEMENTS

Lt. Patrick Daughtry

Lt. Daughtry was interviewed at the PCPD on May 13, 2003 at 1429 hours, the interviewed was audio-recorded. Lt. Daughtry stated he had responded to the earlier homicide/robbery call on 14th St. and had received suspect information from Cpl. Reeves (black male/black female in silver Saturn). Lt. Daughtry stated that approximately one and one-half hours after the 14th St call, he was notified by the PCPD dispatch that a Russell County unit had a possible suspect in the robbery/homicide stopped at a residence on Sandfort Rd. Lt. Daughtry stated he arrived at the residence (subsequently identified as 2814 Sandfort Rd), accompanied by other PCPD units and observed a RCSO unit pulled in the driveway behind a silver Saturn. Lt. Daughtry stated he exited his unit and spoke with RCSO Deputy Marc Wells, who advised he (Wells) believed the occupants of the Saturn to be possible suspects in the robbery/homicide. Lt. Daughtry stated he informed all officers on scene that he wanted a felony take-down conducted and Cpl. Barr and Off. Brennan immediately began to approach the Saturn as Deputy Wells verbally instructed the Saturn driver to place his hands out the window. Lt. Daughtry stated the Saturn driver initially appeared to be complying with instruction, but then "rolled" out of the vehicle and began firing at officers with a handgun. Lt. Daughtry stated he believes he fired one shot from his duty pistol before observing the driver fall to the ground. Lt. Daughtry stated he, along with other officers, approached the prone individual and he, Daughtry, observed the individual attempt to reach for his (offender's) pistol, lying nearby. Lt. Daughtry retrieved the pistol and removed it from the immediate scene. Lt. Daughtry, believing the driver to be deceased, began notification of his superiors.

Cpl. Jarrod Barr

Cpl. Barr was interviewed at the PCPD on May 12, 2003 at 1441 hours, the interview was audio-recorded. Cpl. Barr stated he was

directed by the PCPD dispatch to assist a RCSO unit that had a possible homicide suspect stopped on Sandfort Rd. Cpl. Barr stated he left the PCPD enroute to Sandfort Rd following Cpl. Reeves. Cpl. Barr stated that upon arriving at 2814 Sandfort Rd, he observed a silver Saturn with two occupants that matched the description of the robbery/homicide suspects from the 14th St incident (Cpl. Barr stated he had received offender/suspect information from the homicide victim). Cpl. Barr stated he immediately began to approach the Saturn (both occupants still seated in vehicle) and verbally ordered the driver to place his hands out the window. Cpl. Barr stated he believed several officers were issuing commands to the vehicle occupants simultaneously. Cpl. Barr stated the driver quickly began to exit the Saturn with a pistol in hand and saying nothing, trained the pistol in the direction of Cpl. Barr. Cpl. Barr stated he (Barr) immediately began firing at the driver (from a distance of approximately fifteen feet). Cpl. Barr stated he fired sixteen rounds from his Glock model 22 ,40 cal pistol. Cpl. Barr stated he fell backwards while backpedalling and got behind the RCSO car, reloaded his pistol and re-emerged, seeing the offender lying on the ground (face up). Cpl. Barr stated the offender was still showing signs of movement and he (Barr) and other officer(s) approached the offender and secured him in handcuffs.

Cpl. David Reeves
Cpl. Reeves was interviewed at the PCPD on May 20, 2003 at 1556 hours, the interview was audio-recorded. Cpl. Reeves stated he responded to a call for assistance from a RCSO deputy on Sandfort Rd in reference to a possible suspect from a robbery/homicide earlier in the day in Phenix City. Cpl. Reeves stated he responded from the PCPD to Sandfort Rd and that he had previous information from the homicide victim as to possible suspect and vehicle information. Cpl. Reeves stated that upon his arrival at 2814 Sandfort Rd, he observed Cpl. Barr  and Off.

12

Brennan approaching a silver Saturn occuppied by two persons. Cpl. Reeves stated that almost as soon as he exited his vehicle, he heard gunshots and observed the driver of the Saturn had exited the vehicle and was shooting a pistol. Cpl. Reeves stated he took up a position on the passenger side of the RCSO vehicle and fired two rounds from his Glock 40 cal pistol. Cpl. Reeves stated he observed the offender "go down" and he directed his attention toward the passenger of the Saturn (as other officers are converging on the downed offender). Cpl. Reeves stated he took the passenger into custody without incident and had no further involvement with the downed offender.

Off. Chris Brennan
Off. Brennan was interviewed at the PCPD on May 12, 2003 at 1636 hours, the interview was audio-recorded. Off. Brennan stated he responded to a call for assistance from a RCSO unit at 2814 Sandfort Rd with Off. Farley. Off. Brennan stated that upon arrival at the scene, he had a brief conversation with RCSO Deputy Wells about the vehicle and individuals stopped and he (Brennan) believed the deputy had stopped the suspect(s) in the earlier homicide (based on information relayed to him earlier). Off. Brennan stated there was a brief meeting with Lt. Daughtry to set a game plan. Off. Brennan stated he observed the driver of the Saturn apparently fumbling with something in the car and he (Brennan) and Cpl. Barr began approaching the Saturn and ordering the driver to place his hands out the window. Off. Brennan stated the driver rapidly exited the Saturn with a pistol and began firing in the direction of the officers. Off. Brennan stated he fired sixteen rounds from his Glock 22, 40 cal and the offender fell to the ground. Off. Brennan stated he approached the downed offender and placed handcuffs on him (offender).

Off. Darius Farley

13

Off. Farley was interviewed at the PCPD on May 13, 2003 at 1533 hours, the interview was audio-recorded. Off. Farley stated he arrived on the scene at 2814 Sandfort Rd with Off. Brennan and agreed that the subjects in the Saturn matched the description of the suspects in the earlier homicide. Off. Farley stated the officers began approaching the Saturn and both he (Farley and Off. Brennan) issued verbal commands to the driver of the Saturn to put his hands out the window. Off. Farley stated the driver exited the Saturn rapidly and began firing in the direction of the officers. Off. Farley stated he sought cover and fired a total of nine rounds at the offender from his department issued S&W 40 cal. Off. Farley stated that once the offender went down, he (Farley) assisted in handcuffing the offender and then went to assist in taking the female occupant of the Saturn into custody.

CONCLUSIONS

The main concern to be addressed with this incident is whether the use of deadly force by the officers was justified. The police department's use of force policy is SOP A-16, with use of deadly force covered under subsection IV (A)(1)(a), (see attached copy of policy). In this incident, all five city officers were confronted by an armed assailant. In addition, the assailant was believed (by each officer) to have been involved in a recent (two hours earlier) robbery/homicide. Though there is some confusion as to who fired the initial shot (assailant or officers), there is no dispute that the assailant presented a firearm at/towards the officers. The aforementioned subsection "...protect the police officers or others from what is reasonably believed to be an immediate threat of death or serious bodily harm" is applicable as the presentation of a pistol by the offender could definitely lead to death or serious bodily harm.

The use of force continuum covered by SOP A-16-A was also adhered to by the involved officers. The policy states that the use

14

of deadly resistive force against an officer is to be combated by any tactic necessary to ensure officer survival.

I do have some concern about the lack of planning/coordination by the officers on the scene prior to approaching the suspect(s). Statements by the five involved officers are consistent on the fact that upon their arrival, the suspect(s) presented no immediate threat, both being seated in the Saturn and no firearm yet presented. Lt. Daughtry stated that he attempted to lay out a plan of action, but that various officers/deputies approached the Saturn almost immediately upon arrival with no coordination. This rash approach may have dictated the subsequent actions of the offender (Cliatt). It should be noted that this agency is semi-paramilitary in structure/organization and respect of/to supervisors is necessary to forward the mission of this agency in a competant manner.

I also have some concern about the actual approach of the Satrun made by the officers. During the course of the interviews, the officers stated they were conducting a felony take-down, however, their definitions of what a felony take-down consisted of varied. Felony take-downs are addressed in the SOP B-3 III(E)(1-9) (see attached support document). Based on statements by the officers, several failed to approach from or seek areas of coverage and verbal commands to the suspect(s) were given by several officers/deputies simultaneously (possibly confusing the situation).

The use of patrol vehicle video cameras is an issue repeatedly addressed by the administration of this department so I will not address same. There were three police vehicles on scene with video cameras, however, none were on during the incident (one turned off, one non-functioning, one without a tape).

RECOMMENDATIONS

15

I find all five PCPD officers acted within the department's guidelines/SOP with reference to the use of deadly force and, therefor, recommend no disciplinary action be taken.

I do recommend refresher training for all officers on felony/highrisk take-downs/arrests. I also recommend refreshing officers' understanding of the chain of command, supervisor responsibilty and respect of subordinates to supervisors (with reference to coordinating, executing responses to various situations).

Respectfully submitted,

Captain Jim Hart

16