IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

ROSIE CLIATT, as Personal Representative )
of the Estate of DONTAVIUS CLIATT,       )
                                         )        Case Number:
Plaintiff                                )
                                         )        3:06-CV-0471-SRW
v.                                       )
                                         )
PHENIX CITY, ALABAMA, PHENIX CITY        )
POLICE CHIEF PRESTON ROBINSON,           )
PHENIX CITY, ALABAMA; LT. PATRICK        )
DAUGHTRY, CPL. JARROD BARR, CPL.         )
DAVID REEVES; OFFICERS CHRIS BRENNAN )
AND DARIUS FARLEY, Individually, and Jointly )
And Severally, RUSSELL COUNTY ALABAMA )
DEPUTIES MARK WELLS AND ERIC FETTY,    )
Individually and Jointly and Severally,  )
                                         )
Defendants.                              )

## DEFENDANTS PHENIX CITY, ALABAMA, PHENIX CITY POLICE CHIEF PRESTON ROBINSON, LT. PATRICK DAUGHTRY, CPL. JARROD BARR, CPL. DAVID REEVES, OFFICER CHRIS BRENNAN AND OFFICER DARIUS FARLEY'S MEMORANDUM BRIEF IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants and file this their Brief in Support of Their Cross

Motion for Summary Judgment and Response to Plaintiff's Motion for Summary

Judgment and as grounds therefore shows as follows:

1.

The evidence before the Court does not support Plaintiff's claim for summary

judgment.

2.

The evidence before the Court clearly shows that all of the Defendants are entitled to qualified immunity.

3.

The evidence now before the Court clearly shows that the Plaintiff knew, or reasonably should have known of her claims on or about May 3, 2003 and that under the governing statute of limitation that this lawsuit should be dismissed as a matter of law.

## STATEMENT OF UNDISPUTED FACTS[1]

On or about May 3, 2003, Dontavious Cliatt (hereafter, the "Decedent") robbed and murdered a used car dealer in Phenix City, Alabama. (E.C.F. Document #95, Exhibit "A" Complaint, District Court of Russell County Warrant Number WP 2003 001216.00, dated May 12, 2003; E.C.F. Document #95, Exhibit "B" Russell County District Attorney Felony Intake & Charging Sheet Number 03PL12645). At approximately 6:30 P.M. the evening of May 3, 2003, the Decedent, with his companion Denise Williams, was driving south on Sanfort Road when they were passed by a Russell County Sherriff's Department patrol vehicle traveling in the opposite direction. (E.C.F. Document #95, Exhibit "C" Memorandum of Interview of Denise Williams by Phenix City Investigator Michael Vargo dated May 4, 2003; E.C.F. Document #95, Exhibit "D" Memorandum of Interview of Denise Williams by Phenix City Investigator Socrates Miles dated May 4, 2003). At that time, the Decedent became nervous and pulled into a random residential driveway and put his vehicle into park, hoping that Deputy Wells would not turn around. (E.C.F.

---

[1] The Plaintiff is evidently attempting to challenge the factual account of what prompted the shooting by relying on the unsworn statement of Mariette Williams. The Phenix City Defendants are filing contemporaneously with this Memorandum a Motion to Strike Exhibit 4 of Plaintiff's evidentiary submission from consideration which leaves the record as to the facts set out below undisputed.

Document #95, Exhibit "C" Vargo Interview; E.C.F. Document #95, Exhibit "D" Miles

Interview; E.C.F. Document #95, Exhibit "E" Russell County Sheriff's Department LAW

Incident Table). Upon seeing the Decedent's vehicle pull into the driveway, Deputy

Wells turned his vehicle around and pulled in directly behind the Decedent's vehicle.

(E.C.F. Document #95, Exhibit "C" Vargo Interview, E.C.F. Document #95, Exhibit "D"

Miles Interview).

Upon exiting his car, Deputy Wells approached the driver's side of the vehicle

and asked the Decedent for his driver's license and other documentation. (E.C.F.

Document #95, Exhibit "C" Vargo Interview, E.C.F. Document #95, Exhibit "D" Miles

Interview). When the Decedent could not produce either a driver's license or other

documentation, Deputy Wells returned to his car and radioed 911 dispatch to run the

Decedent's status. (E.C.F. Document #95, Exhibit "C" Vargo Interview, E.C.F.

Document #95, Exhibit "D" Miles Interview, E.C.F. Document #95, Exhibit "F" Hart

Report). Deputy Wells was advised by dispatch that the Decedent and his vehicle

matched the description of a suspect and vehicle involved in the robber and murder

committed earlier that day. (E.C.F. Document #95, Exhibit "F" Hart Report).

Consequently, Deputy Wells requested backup assistance and immediately drew his

service firearm to "cover" the Decedent. (E.C.F. Document #95, Exhibit "C" Vargo

Interview, E.C.F. Document #95, Exhibit "D" Miles Interview). Lieutenant Patrick

Daughtry, Corporal Jarrod Barr, Corporal David Reeves, Officer Chris Brennan and

Officer Darius Farley (collectively referred to as the "Phenix City Officers") responded to

the call for assistance at about the same time. (E.C.F. Document #95, Exhibit "F" Hart

Report). Upon their arrival, these officers also immediately drew their .40 caliber

firearms and pointed them at the Decedent's vehicle. (E.C.F. Document #95, Exhibit "C" Vargo Interview; E.C.F. Document #95, Exhibit "D" Miles Interview). Corporal Jarrod Barr approached the Decedent and instructed the Decedent to place his hands outside the vehicle. (Exhibit "A", Barr Affidavit). Instead of following Corporal Barr's instructions, the Decedent quickly exited the vehicle, pointing a pistol at Corporal Barr. (Exhibit "A", Barr Affidavit). Then, the Decedent began to fire his pistol at all of the officers present (Exhibit "B", Daughtry Affidavit). The Phenix City Officers, joined by Deputy Wells, returned fire and the Decedent was shot and killed. (Exhibit "A", Barr Affidavit; Exhibit "B", Daughtry Affidavit). Deputy Wells and the Phenix City Officers approached the Decedent as he was lying prone on the ground face up, and observed the Decedent attempting to reach for his pistol lying nearby. (E.C.F. Document #95, Exhibit "F" Hart Report). Lieutenant Daughtry retrieved the Decedent's pistol, and Officer Brennan, with the assistance of Officer Farley, secured the Decedent in handcuffs. (E.C.F. Document #95, Exhibit "F" Hart Report). During this time, Corporal Reeves took Ms. Williams into custody. (E.C.F. Document #95, Exhibit "F" Hart Report).

The Decedent died on the scene from multiple gunshot wounds. (E.C.F. Document #95, Exhibit "H", Alabama Certificate of Death of Dontavious Lamar Cliatt dated May 20, 2003; E.C.F. Document #95, Exhibit "I" Department of Forensic Sciences Report of Autopsy dated May 5, 2003).

## PROCEDURAL HISTORY

On April 6, 2004, the Plaintiff executed an ante litem notice to serve upon the Russell County Commission regarding her claims on behalf of the Decedent. It does not

appear that the Plaintiff ever executed or served such an ante litem notice on the City of

Phenix City, Alabama.

The Plaintiff filed her Complaint on May 25, 2006, more than three years after the

incident complained of occurred, initially identifying only the City of Phenix City and the

former Chief of Police Preston Robinson as named defendants.  (E.C.F. Document #1).

On June 22, 2006, the City Defendants filed a Motion to Dismiss to which the Plaintiff

responded on July 13, 2006.  On September 27, 2006, Magistrate Judge Susan Russ

Walker issued her Amended Scheduling Order.  On December 1, 2006, Judge Walker

granted in part and denied in part the Motion to Dismiss filed by the City Defendants.  On

December 6, 2006, the Plaintiff filed her Amended Complaint (First), naming additional

defendants and specifying three causes of action:  (1)  a § 1983 action against the City of

Phenix City and individual defendants in their official capacities; (2) a § 1983 action

against defendant Preston Robinson and (3) a § 1983 action against the individual

defendants in their individual capacities.  On December 14, 2006, the Plaintiff filed an

additional Amended Complaint but without substantively changing the parties or claims

at issue.  On March 30, 2007, this Court vacated the Amended Scheduling Order.  On

December 7, 2007, the Plaintiff filed her Motion for Summary Judgment, along with her

Brief in support thereof and evidentiary submissions.

## SUMMARY JUDGMENT STANDARD

"Summary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which

are designed 'to secure the just, speedy, and inexpensive determination of every action.'"

Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

Celotex, 477 U.S. at 327.

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant. Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990). However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Id. (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529 p. 299). "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions and the like need not be credited.'" Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) (quoting Mass. School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998)).

The City of Phenix City, Alabama, Preston Robinson and the Phenix City Officers are entitled to a judgment as a matter of law on all claims of the Plaintiff's Complaint for these reasons: qualified immunity and the failure of the Plaintiff to comply with the applicable Alabama statute of limitations for the claim at issue.

The Phenix City Officers and Preston Robinson are entitled to judgment in their favor as a matter of law on the Plaintiff's Complaint because they are entitled to qualified immunity. Once a defendant has asserted the defense of qualified immunity, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that Preston Robinson and the Phenix City officers had "fair warning" that his conduct violated the Plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct in this case was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster v. Monroe County, 116 F.3d 1419, 1424 (11th Cir. 1998). "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Bd. Of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

The parties named above are entitled to qualified immunity because they were performing discretionary functions; the Plaintiff cannot meet her burden of showing a constitutional violation on the part of these Defendants and even if the Plaintiff could make such a showing, she cannot point to any contemporaneous clearly established law that provided Defendants with "fair warning" that their conduct was illegal.

Defendants will detail in further sections below the reasons that improper notice and statute of limitations also require dismissal of the entirety of Plaintiff's Complaint.

## ARGUMENT

Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir. 1991). The Eleventh Circuit Court of Appeals has observed, "[t]hat qualified immunity protects governmental actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." Lassiter v. Alabama A & M Univ., 28 F.3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted). In the light of preexisting law the unlawfulness must be apparent. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Mere statements of broad legal truisms, without more, are not sufficient to overcome qualified immunity. Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993).

Once a defendant has asserted the defense of qualified immunity, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v.

Gilley, 500 U.S. 226, 232 (1991)).  The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that the defendant had "fair warning" that his conduct violated the plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In Plaintiff's pending Motion for Summary Judgment, the allegation is that the Defendants employed excessive force against the Decedent, resulting in his death, in violation of his Fourth and Fourteenth Amendment rights.  Plaintiff's Motion is due to be denied because the facts in the record do not establish that the Defendants violated Decedent's constitutional rights, or that established law put Defendants on notice that their actions were unconstitutional.  In fact, the undisputed facts clearly show that the Defendants committed no constitutional violation vis-à-vis the Decedent.

## I.    Defendants Phenix City Officers Did Not Violate The Decedent's Constitutional Rights

As Plaintiff admits, the Decedent did not have a constitutional right to be absolutely free from the use of any force when being detained and arrested as a suspect for murder.  The Supreme Court has established that, in order to balance the necessity of using some force attendant to an arrest against the arrestee's constitutional rights, a court must evaluate a number of factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Graham v. Connor, 490 U.S. 386 (1989).

In Plaintiff's Motion for Summary Judgment, she alleges that the Defendants Phenix City Officers, among others, used excessive force on the Decedent in two respects.  First, the Plaintiff alleges that the Defendants Phenix City Officers and others

created a situation that was so dangerous that it provoked the Decedent to take violent action against the Defendants. Second, the Plaintiff alleges that the force used was excessive in that it was disproportionate to the threat presented by the Decedent. Essentially this second claim is that too many rounds were fired in response to the Decedent's violent action.

### A.    Defendants Phenix City Officers Did Not Provoke The Decedent

The Plaintiff argues that the Defendants Phenix City Officers provoked the Decedent to violence. It is not disputed that the Decedent chose to turn into the driveway and park the vehicle he was driving. After Deputy Wells called for backup the Defendants Phenix City Officers only gave the Decedent instructions to place his hands outside the vehicle window. Had those instructions been followed, the violent episode that transpired most probably would never had occurred. The important point is that the Decedent had an option open to him other than exiting his vehicle and opening fire with his pistol on the law enforcement personnel on the scene.

The Decedent chose to resist arrest. That was his choice, and it was an important one. As noted above, he had other options and chose to forego those in exchange for his preferred option—a gunfight. The undisputed evidence shows that after the Decedent fell to the ground and no longer posed a threat, the Defendants Phenix City Officers ceased fire. In fact, even when the Decedent continued to reach for his gun, he was not fired upon by the Defendants. There is no evidence whatsoever that the Defendants fired on the Decedent after he fell to the ground.

The Plaintiff cites scant legal authority in his supporting Memorandum for his Motion for Summary Judgment. One of the cases cited is Gilmere v. City of Atlanta, 774

F.2d 1495 (11th Cir. 1985). The facts of that case are so dissimilar to the case at bar as to render any suggestion of an analogous relationship between the two ridiculous. In Gilmere, the Plaintiff was intoxicated, was unarmed and did not present a threat to the safety of the police officers who ultimately beat him and shot him in the stomach when he attempted to flee the beating he was receiving. In the present case, the Decedent had just robbed and murdered someone hours earlier and was attempting to evade capture. Decedent had a pistol which he pointed at Corporal Barr and fired at all of the Defendants. Under any standard, pointing or firing his pistol constituted provocation for the officers to use force in this case. There is no legal authority to support Plaintiff's position that it is unreasonable to approach a suspect with firearm drawn and instruct the suspect to show his hands in an attempted arrest.

**B.      The Phenix City Officers Did Not Use Excessive Force**

It is clear under the established legal standards that the Phenix City Officers did not use excessive force in returning fire to the Decedent or even taking the unsupported assertion of the Plaintiff that the Officers fired first while the Decedent was merely brandishing his weapon. The test for determining whether an officer has applied excessive force in the course of seizing a person is the "objective reasonableness" test. Graham v. Connor, 490 U.S. 386, 395 (1989). Whether a specific use of force is objectively reasonable turns on several factors including the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is resisting or fleeing. Graham, 490 U.S. at 394; Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993). The Eleventh and Third Circuit Courts of Appeal have also considered "other relevant factors including the possibility that the persons subject to the police

11

action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of affecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend…" Crosby v. Paulk, 187 F.3d 1339, 1351 (11th Cir. 1999) (quoting Sharrar v. Felsing, 128 F.3d 810, 822 (3rd Cir. 1997)).

Generally, the actions of the officer must be reasonable in light of the facts and circumstances confronting the officer, without regard to his underlying intent or motivation. Graham, 490 U.S. at 397. The Eleventh Circuit has added "[w]e must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction would prove fatal." Crosby v. Monroe County, 394 F.3d 1328, 1333-34 (11th Cir. 2004).

The United States Supreme Court has held that the courts are "loath to second-guess the decisions made by police officers in the field." Vaughn v. Cox, 343 F.3d 1323, 1331 (11th Cir. 2003); Graham v. Connor, 490 U.S. 386, 396-97 (1989). This generally accepted rule makes common sense, as it permits officers to take necessary action to protect themselves and others in the field without concerning themselves about personal liability for frivolous litigation, such as the case at bar.

### 1.    The Decedent's Crimes Earlier in the Day Justified the Force Used

The first precondition for the use of deadly force is a consideration of the severity of the crime at issue. In this case, the Phenix City Officers had reliable information from a trustworthy source that the Decedent had committed a brutal murder earlier that same day. Also, at the time he was shot, the Decedent brandished a gun at the officers and shot

at them, committing another series of crimes against the officers, attempted murder. This constitutes sufficient severity of criminal activity to justify application of lethal force.

### 2.    The Decedent Presented an Immediate, Lethal Threat to the Officers

The second precondition for the use of deadly force is that the officer must have probable cause to believe that the suspect poses a threat of serious physical harm, to the officer or others, or that he has committed a crime involving the infliction or threatened infliction of serious physical harm. It is unquestioned that the Decedent, armed and firing upon the officers, presented a clear and present danger of immediate harm to the Phenix City Officers and others present. Even if the Plaintiff's unsupported assertion is believed, that the Decedent did not fire first, "an officer is not required to wait until an armed and dangerous felon has drawn a bead on the officer before using deadly force." Montoute v. Carr, 114 F.3d 181, 185 (11th Cir. 1997).

Given the facts, the Phenix City Officers had every reason to believe the situation was life threatening for all of the officers involved. All of the factors at issue strongly argue in favor of the application of lethal force. As the Court has already held, this "condition is met because Decedent was suspected of homicide, which is a crime involving the infliction of serious physical harm." (E.C.F. Document #77).

### 3.    The Decedent was Resisting Arrest

The third precondition for the use of deadly force is whether the suspect was actively resisting arrest or seeking to evade arrest by flight. It is clear from the record that the Decedent was seeking to evade arrest when Deputy Wells pulled up behind his vehicle. When ordered to show his hands, the Decedent instead chose to exit his vehicle

and fire his pistol at all of the officers present. It would seem that would qualify as resisting arrest.

Code of Ala. § 13A-3-27(a) provides that officers are authorized to use reasonable force to effectuate an arrest or prevent an escape. Deadly force is authorized to effectuate an arrest or prevent the escape of a felon and to defend against the use of deadly physical force. Code of Ala. § 13A-3-27(b). Under Alabama law, the Phenix City Officers were definitively justified in their use of lethal force against the Decedent.

### 4.    The Garner Test

The Supreme Court's decision in Tennessee v. Garner 471 U.S. 1 (1985) was limited by the recent decision of Scott v. Harris, 127 S. Ct. 1769, 1777 (2007) in that, "Garner was simply an application of the Fourth Amendment's "reasonableness" test, to the use of a particular type of force in a particular situation." Assuming the facts in the case at bar are determined to be similar to the facts in Garner, the requirements would be considered satisfied.

First, the Decedent was both a threat to the officers and had committed a violent crime the same day inflicting lethal force on his victim. Second, deadly force was necessary to apprehend the Decedent, and to prevent the Decedent from inflicting lethal force upon the officers present. Third, there was no time to give a warning as the Decedent rolled out of his vehicle, gun blazing. A warning is not always required before using lethal force. Carr v. Tatangelo, 338 F.3d 1259, 1269 n. 20 (11th Cir. 2003). The Decedent already had his gun out and drawn and then fired at the officers. Giving a warning could have caused the death of one of the officers on the scene.

Clearly, the Garner factors are satisfied by the case at bar.

**5.**    **Plaintiff's Burden**

On a motion for summary judgment, the plaintiff has the burden to identify substantial evidence of a genuine issue of material fact:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise specified in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). In order to defeat this cross motion for summary judgment, the plaintiff must produce substantial evidence that the Phenix City Officers could not have believed that their actions were lawful. From the record available today, that appears to be an insuperable burden.

Despite the Plaintiff's emphasis on the report of Captain Hart which we have today moved to strike, the report ultimately finds that the use of lethal force in this case was justified.

The Plaintiff's only other cited authority is Hopkins v. Andaya et al, 958 F.2d 881 (9th Cir. 1992) and O'Neal v. DeKalb County, 850 F.2d 653 (11th Cir. 1988). For purposes of qualified immunity, Ninth Circuit law cannot be considered clearly established law for officers within the jurisdiction of the Eleventh Circuit, as only decisions of the U.S. Supreme Court, the Eleventh Circuit Court of Appeals or the Supreme Court of Alabama serve as clearly established law. Jenkins v. Talladega Bd. Of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc). To the extent the Court looks to

Hopkins in any case, that case involved a threat level from the suspect that did not rise to the level of use of lethal force and had nothing whatsoever to do with the number of rounds fired by the officers. So the Hopkins decision is entirely inapposite with the case before the Court.

O'Neal v. DeKalb County actually supports the position of the Defendants in that the decedent in that case went on a rampage through a hospital, stabbing several people, two police officers confronted the decedent and ordered him to drop his knife, he failed to follow the officers' instructions and instead rushed the officers leading to a shooting that left him dead. Crucially, both officers fired and then one of the officers fired a second volley. It was argued by the Plaintiff, just like in this case, that the second volley was excessive. The Eleventh Circuit disagreed, holding that because the decedent was still on his feet holding a lethal weapon that the force was authorized.[2]

In summary, the Phenix City Officers on the scene used lethal force as authorized by law to effectuate an arrest and prevent harm to themselves and as such are entitled to qualified immunity and judgment as a matter of law on that ground. The remaining City Defendants, Preston Robinson and the City of Phenix City, Alabama, would only be held liable for the actions of the officers if found to be illicit. Since the Phenix City Officers are entitled to judgment as a matter of law on this basis, both Preston Robinson and the City of Phenix City, Alabama should also be granted a judgment as a matter of law since there is no underlying tort for which they may be held liable.

---

[2] In this case officers immediately ceased shooting once the suspect was on the ground, even though he was still within arm's reach of his pistol.

16

**II.    All Defendants Are Due A Judgment As A Matter of Law as Plaintiff Failed to File Her Complaint Within the Applicable Statute of Limitations**

Counsel for all Defendants have raised in several Motions to Dismiss the affirmative defense of Statute of Limitations.  The Court in its most recent ruling on the Motion to Dismiss filed on behalf of Deputy Wells stated:

> Because it is not apparent from the face of the complaint that the statute of limitations on Plaintiff's claims has expired, dismissal on this ground is not warranted at this time. *Tello*, 410 F.3d at 1288.

Therefore, since there is no disagreement regarding the applicable law on the statute of limitations in Alabama for a claim of the type brought here, the only burden on Defendants is to show that the Plaintiff knew, or reasonably should have known that the right to file this action had accrued on or before May 24, 2004, two years and one day prior to the filing of this lawsuit.

Defendants will, out of an abundance of caution, briefly restate the law as to the applicable statute of limitations.  See <u>Lanier v. City of Selma</u>, 1997 U.S. Dist. LEXIS 8122 (1997) which states as follows:

> The proper statute of limitations for all actions arising out of 42 U.S.C. 1983 is the forum state's general or residual statute of limitations for personal injury actions. <u>Owens v. Okure</u>, 488 U.S. 235, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989). Alabama's general statute of limitations for personal injury actions is two (2) years. See Code of Alabama 6-2-38(l). Any action arising under 42 U.S.C. 1983 filed in any federal court sitting in Alabama must be filed within two (2) years of the incident that is the basis of the complaint. <u>Jones v. Preuit & Mauldin</u>, 876 F.2d 1480 (11th Cir. 1989).

As the Court pointed out in ruling on the original Motion to Dismiss filed by the Phenix City Defendants on this ground:

> Section 1983 actions do not accrue until the plaintiff knows or has reason to know that he has been injured. . . . Nor will a Section 1983 action accrue until the plaintiff is aware or should have been aware who has inflicted the injury." <u>Mullinax v. McElhenney</u>, 817 F.2d 711, 716 (11th Cir. 1987)(citation omitted).

The plaintiff clearly knew on May 3, 2003 or shortly thereafter that her son had been killed in a gunfight with police officers and sheriff's deputies. There is not only evidence that she knew about it but a great deal of evidence that she was pursuing a claim against the police officers and the sheriff's deputies involved in this incident.

The first item that indicates the Plaintiff knew of her claim and who should it be pursued against is a letter dated May 21, 2003 from J. Farrest Taylor of the Cochran Firm captioned **Police Shooting/Wrongful Death** advising the Plaintiff that they will not be able to handle her case and more importantly advising her that she should be aware of the applicable statute of limitations and that if she does not file her Complaint in a timely manner that she may be "forever barred from doing so". The letter is attached as Exhibit "C" to this Memorandum and incorporated by reference herein.

The second item that indicates the Plaintiff knew of her claim and who should it be pursued against is a letter dated July 28, 2003 from Jim S. Calton, Jr. of the Calton & Calton law firm refusing representation and again reminding the Plaintiff, "that there are applicable statutes of limitations that may bar you from bringing a claim in the future if you wait too long." The letter is attached as Exhibit "D" to this Memorandum and incorporated by reference herein.

The third item that indicates the Plaintiff knew of her claim and who should it be pursued against is a letter dated November 18, 2003 indicating the Plaintiff had sent the attorneys file material in September of 2003. The letter is refusing representation and is signed by Stephen D. Apolinsky of the firm Eastman & Apolinsky. The letter is attached as Exhibit "E" to this Memorandum and incorporated by reference herein.

The fourth item that indicates the Plaintiff knew of her claim and who should it be pursued against is a letter dated January 12, 2004 from Keith Thomas of R. Keith Thomas, LLC captioned **Dontavius L. Cliatt** and referring evidently again to this case. Mr. Thomas admonishes the plaintiff that, "The failure to file your claim in a timely manner will result in it being barred forever." The letter is attached as Exhibit "F" to this Memorandum and incorporated by reference herein.

The fifth item that indicates the Plaintiff knew of her claim and who should it be pursued against is a letter dated April 11, 2005 from Juraldine Battle-Hodge. This letter should have impressed upon the Plaintiff the dire need to file her suit on or before May 3, 2005, as it stated:

> **...this letter will confirm that if you wish to file a wrongful death lawsuit, you must do so no later than May 3, 2005. Any claim you intend to pursue must be filed before the expiration of the limitations period. Failure to file your claim before the expiration period will result in an absolute bar to your right to seek damages or restitution.**

The letter is attached as Exhibit "G" and incorporated herein by reference.

The sixth item that demonstrates the Plaintiff was aware or should have been aware of who inflicted the injury is an ante litem notice she executed for service upon the Russell County Commission April 6, 2004. See attached as Exhibit "H" and incorporated herein by reference. Importantly, the Plaintiff names the Russell County Sheriff's Department as a responsible party along with other fictitious parties and demands $100,000 in settlement of her claim. Clearly, the Plaintiff knew enough at least by April 6, 2004 to hold the Russell County Sheriff's Department responsible for her son's death and demand $100,000 from Russell County. That was more than two years from the filing of this action on May 25, 2006.

The seventh item that demonstrates the Plaintiff was aware or should have been aware of who inflicted the injury is an article published in the Columbus Ledger-Enquirer on May 9, 2003 captioned "Man Had No Prior Felonies". The article was in the Local Section, on page C3 of the May 9, 2003 Columbus Ledger-Enquirer. The article is attached as Exhibit "I" and incorporated herein by reference. The text of the article is set out here to make it clear that a cursory reading of it could identify with sufficient clarity the parties to file suit and identify the specific officers and deputies through discovery and fictitious party pleading:

> The 21-year-old Phenix City man shot and killed by Phenix City police officers Saturday had no felony convictions in Russell County, county records show. Dontavious Lamar Cliatt was believed to be connected with the shooting death of David Glenn Gibson, 45, during a suspected robbery at Gibson's used car lot in Phenix City around 5 p.m. Saturday. About 90 minutes later, Cliatt was spotted and stopped by authorities as he was driving along Sandfort Road. When officers directed Cliatt to exit the vehicle, he emerged with pistol in hand and fired at officers, Phenix City police said. Two Russell County deputies and five officers fired back at Cliatt, striking him multiple times, police said. As of late Thursday, Phenix City Police Chief Preston Robinson declined to release the names of the officers involved in the shooting. The officers remain on administrative leave with pay. A female passenger who had been in the car with Cliatt still remains a "person of interest," said Police Capt. Jim Hart.

It is evident from the article that Phenix City Police Officers and Russell County Sheriff's Deputies were involved in the shooting. This item was published on May 9, 2003 and is still available on the internet for a cost of $2.95. It required approximately five (5) minutes to locate the article after performing a Google search.

The eighth item that demonstrates the Plaintiff was aware or should have been aware of who inflicted the injury is an affidavit she executed July 12, 2006. The affidavit

is attached as Exhibit "J" and incorporated herein by reference.[3]  In the sworn affidavit at Paragraph 9, the Plaintiff states that she "consulted with several attorneys about them filing suit **against Phenix City and its police officers** about the facts surrounding this incident on several occasions." (emphasis added).  She gives the dates of correspondence of attorneys she corresponded with about suing Phenix City and its police officers.  She received correspondence back from one of the attorneys she consulted with about suing Phenix City and its police officers as early as May 21, 2003.  It is evident that she knew or should have known of the claim and who to pursue the claim against at least as early as when she saw Mr. J. Farrest Taylor of the Cochran Firm, which was clearly on or before May 21, 2003, more than three years before this suit was filed.

In addition, the Plaintiff had access to an eyewitness to the incident who could have reported to her the officers involved.  As outlined in Defendant Wells' Brief in Support of His Motion to Dismiss (E.C.F. Document #55), the Plaintiff also had access to the procedures outlined in Fed. R. Civ. P. 27 to gather the additional information, if indeed she was unable to get it from the five attorneys she contacted, the eyewitness or the newspaper accounts of the shooting.  Defendants also adopt the argument regarding Paige v. Police Dep't of the City of Schenectady, 264 F.3d 197 (2nd Cir. 2001) in Defendant Wells' Brief in Support of His Motion to Dismiss (E.C.F. Document #55).

To review, the Plaintiff had ample opportunities and appears from documents submitted by her own counsel to have known about the injury and whom to seek recovery well before May 24, 2004.  Not only that she was positively instructed by her last attorney that she must file before May 3, 2005 or have her claims barred forever.  The

---

[3] This affidavit was filed by the Plaintiff and attached to the affidavit are the five letters referenced earlier. The Court may find the original filing at E.C.F. Document #9, Exhibit "A" and Exhibit "3a" through "3e" which Defendants hereby incorporate by reference.

Plaintiff chose to ignore that learned legal counsel and the panoply of information readily available to initiate the litigation, which of course she could have done on a pro se basis if no legal counsel was available to her.

For her absolute failure to observe the applicable statute of limitations and now with an affirmative showing by the Defendants that the Plaintiff knew or should have known well before May 24, 2004 of the claim and who to pursue it against, all claims in the Plaintiff's Complaint against all Defendants should be dismissed as a matter of law as her failure to file within the statutory period serves as an absolute bar to recovery.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that their Cross Motion for Summary Judgment be granted and that the Plaintiff's Motion for Summary Judgment be denied.

This 31st day of December, 2007.

MCKOON & ASSOCIATES

*/s/Joshua R. McKoon*

By:_____
    Joshua R. McKoon
    State Bar No. MCK057

925 Broad Street
Post Office Box 3220
Phenix City, Alabama 36868-3220
334.297.2300
facsimile 334.297.2777

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served the foregoing upon Counsel for all other parties by delivering it via electronic mail through the CM/ECF system on this 31st day of December, 2007:

Fulton B. Eaglin
220 E. Huron, Suite 210
Ann Arbor, Michigan 48104

Scott Wayne Gosnell
Webb & Eley
7475 Halcyon Pointe Road
P.O. Box 240909
Montgomery, AL 36124

/s/ Joshua R. McKoon
_____
Counsel for Defendants