IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| ROSIE CLIATT, as Personal Representative of The Estate of Dontavius Cliatt, <br><br> Plaintiff(s) <br><br> v. <br><br> PHENIX CITY, ALABAMA, et al., <br><br> Defendant(s) | ) <br> ) <br> ) Civil Action No. 3:06cv471-SRW <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**AND**

**RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

**I.**

**INTRODUCTION**

Defendants have tried to confuse the facts of this case to make it appear that killing Mr. Cliatt was reasonable and, thus, that they are protected by qualified immunity. But, as she made clear in her summary judgment motion, Plaintiff stipulates to the facts contained in Captain Hart's report for purposes of her motion. It is based on Captain Hart's statement of facts that Plaintiff seeks a ruling from this Court that as a matter of law Defendants violated Mr. Cliatt's constitutional and civil rights when they killed him. Any attempt by Defendants to disavow or undermine Captain Hart's statement of facts should be rejected.

The case law cited by Plaintiff supports her motion and Defendants' attempts to distinguish these legal authorities are inapt. The legal principles articulated in those cases are simple. First, police cannot provoke someone to violent action and then claim immunity for the

1

harm they inflict that is the result of their provocation. Second, when confronted with a dangerous situation, police can only use that level of force that is reasonably proportionate to bring the situation under control. These simple legal principles apply squarely to the facts of this case. This is true even if the particular facts of this case and the facts of the cases cited by Plaintiff in her brief are not precisely identical.

Defendants' statute of limitations arguments are inappropriate at best. The Court already formally considered and rejected the statute of limitations arguments when Defendants moved for the dismissal of Plaintiff's lawsuit on that basis. Similarly, Defendant Wells' qualified immunity argument is also inappropriate at best. Like the statute of limitations argument, the Court has already formally considered and rejected Defendant Wells' motion for dismissal of Plaintiff's claims against him based on qualified immunity. In that the Court has already considered and rejected both of these arguments, Defendants should be sanctioned for continuing to cloud the issues and waste the Court's time and resources with these arguments.

Finally, Defendants' request for summary judgment in their favor should be denied. Although Plaintiff believes she is entitled to summary judgment based on Captain Hart's report and the legal authorities cited in her brief, even if she is not, at a minimum there are genuine and material questions of fact as to whether Defendants used excessive force in violation of Mr. Cliatt's constitutional and civil rights. Based on the evidence Plaintiff has presented in support of her motion, there simply is no basis for the Court to rule as a matter of law that Defendants are entitled to have Plaintiff's claims summarily dismissed.

## II.

### PLAINTIFF'S MOTION IS BASED ON THE STATEMENT OF FACTS CONTAINED IN CAPTAIN HART'S REPORT

In their responses, Defendants attempt to portray their actions leading up to the death of Mr. Cliatt as calm, deliberate, coordinated and "by the book". Defendants have framed their statements of fact so as to leave the Court with the impression that their descriptions of the events leading up to Mr. Cliatt's death are in line with the factual statements contained in Captain Hart's report. However, Plaintiff urges the Court to carefully review Captain Hart's report and is confident that upon doing so the Court will see that many of the "facts" advanced by Defendants are inconsistent (and in some cases actually conflict) with the factual statements contained in Captain Hart's report.

Defendants' attempts to essentially undermine Captain Hart's factual statements are curious when one considers that Captain Hart was tasked by the Phenix City Police Department to conduct the official internal investigation into Mr. Cliatt's shooting death. This curiosity is amplified when one further considers that Captain Hart ultimately concluded that the police officers were justified in killing Mr. Cliatt based on his view that once Mr. Cliatt presented a firearm at the officers, they were justified in using deadly force to subdue him.

Although the facts of this case are anything but clear, and Plaintiff certainly does not agree with Captain Hart's ultimate conclusion regarding the propriety of Mr. Cliatt's death, for purposes of her summary judgment motion, Plaintiff has based her summary judgment motion on the factual statements contained in Captain Hart's report. These facts are straightforward and – despite Defendants' attempts – stand wholly unrebutted:

- After the initial stop when Mr. Cliatt was unable to provide a driver license or automobile registration, the police radioed into headquarters and were advised that Mr. Cliatt and his vehicle matched the murder suspect's description.

- The police on the scene called for back up from the local SWAT team.

- Once the SWAT team arrived on the scene, five police officers immediately approached Mr. Cliatt's car in inconsistent, uncoordinated manner, with guns drawn.

- Various officers yelled commands toward Mr. Cliatt's car as they approached.

- Mr. Cliatt "rolled" out of the car with his gun out and fired a shot at the police officers.[1]

- After Mr. Cliatt fired a shot at the police officers and was laying prone on the ground, the five officers fired 57 rounds back at Mr. Cliatt and killed him.

See Exhibit 5 to Brief Supporting Plaintiff's Motion for Summary Judgment.

Notwithstanding the clarity of Captain Hart's factual findings, Defendants have attempted to introduce "facts" that differ from those contained in his report.  However, since Captain Hart's report is the official police version of the events leading up to Mr. Cliatt's death, any other "facts" Defendants attempt to introduce are nothing more than "red herrings" designed to paint Mr. Cliatt in the worst light possible and distract the Court from the operative and relevant issues pertaining to Plaintiff's summary judgment motion.  Defendants should not be allowed to "disavow" Captain Hart's report when it is convenient for them in order to create spurious factual issues so as to defeat summary judgment against them.  To the contrary, based on Captain Hart's factual findings – which represent the official factual findings of the Phenix City Police Department – there can be no genuine, disputed issues of material fact and the Court can rule on Plaintiff's summary judgment motion as a matter of law.[2]

### III.

### CASE LAW SUPPORTS PLAINTIFF'S LEGAL POSITION

---

[1] Defendant Wells admits in his response that it is unclear whether Mr. Cliatt or the police officers fired the first shot.  However, for purposes of her summary judgment motion, Plaintiff has and will continue to assume that Mr. Cliatt fired the first shot.

[2] The same is not true of Defendants' motions for summary judgment, as is explained in more detail below.

Defendants' attempts to distinguish the case law cited by Plaintiff are inapt. The cases are similar enough in their facts to enable the Court to apply the legal principles articulated in those cases to Mr. Cliatt's case. Just because the facts in the Cliatt case and the case law cited in Plaintiff's summary judgment brief are not identical does not mean that the legal principles articulated in that case law cannot be applied to the issues posed in the Cliatt case.

As the Michigan Supreme Court has noted, "the application of doctrines and rules of law to new cases need not necessarily await or depend on pat factual identity." *Hoffman v. Burkhead,* 353 Mich. 47, 54, 90 N.W.2d 498 (1958). If it did, there would be no workable rule of law, for every subsequent case is somewhat different. It therefore follows that, "[t]he rule of *stare decisis* has reference to [the] principles or points of law and not [the] factual situations existent in cases when such principles apply." *In re Sprenger's Estate,* 337 Mich. 514, 523, 60 N.W.2d 436 (1953).

The case law cited by Plaintiff in her summary judgment brief stands for two very simple principles, which, if applied to Mr. Cliatt's case, require the conclusion that the police used excessive force against Mr. Cliatt in violation of his constitutional and civil rights. First, police cannot create a situation that provokes someone into taking violent action against the police and then use the shield of qualified immunity to dodge the consequences of using deadly force to quell the violent action that the police themselves provoked. Second, even if the police are entitled to use force against a suspect, they must use only that level of force reasonably proportionate to bring the situation under control.

As Captain Hart noted in his report, although Mr. Cliatt presented no immediate threat, the police officers on the scene acted in such a "rash" manner that they ultimately provoked Mr. Cliatt to violence. Captain Hart's report makes it clear that the five officers who were involved

5

in killing Mr. Cliatt did not properly assert or maintain control of the situation. Captain Hart clearly expressed that he believed the conduct of the officers may have led Mr. Cliatt to react the way he did. Mr. Cliatt did not display aggressive behavior when initially pulled over. He was compliant and non-threatening. Only when all the police officers drew their guns and converged on his car in a rash, inconsistent, confusing, and threatening manner did he get out of the car and shoot at the officers.

Once police officers create a situation that provokes a citizen to violence, those officers are not shielded from liability for harm they inflict that is the result of their improper conduct. See *Gilmere v. City of Atlanta*, 774 F.2d 1495 (11th Cir. 1985). In other words, federal law does not permit police officers to create situations that provoke citizens into violent acts, and then turn around and use deadly force to regain control of the dangerous situation that they themselves created.

Under the principles of law articulated in *Gilmer*, even if Mr. Cliatt did in fact fire first at the police officers, he did so only after the police created a situation so tense and so dangerous that it ultimately provoked Mr. Cliatt into taking violent action against the police. Under *Gilmere*, the individual police officers in the instant case cannot escape liability for killing Mr. Cliatt even if they had a legitimate fear that he could harm them because that potential harm was the result of their own failure to follow proper police procedures for taking Mr. Cliatt into custody.

Once the police provoked Mr. Cliatt's violent reaction, what level of force were they entitled to use to bring the situation back under control? As stated in Plaintiff's summary judgment brief, the police are not free to simply blast away at a criminal suspect, even one who fires a shot at them. Rather, under Eleventh Circuit precedent, the police's use of force must be

6

sufficiently tailored to a particular situation such that it is reasonably proportionate to the threat of danger.  See *O'Neal v. DeKalb County, et al.*, 850 F.2d 653 (11th Cir. 1988).  See also *Hopkins v. Andaya, et al.*, 958 F.2d 881 (9th Cir. 1992).

Defendants argue that even if their actions did violate Mr. Cliatt's constitutional and civil rights, they still cannot be held liable because they did not know at the time they killed him that their actions violated his rights.  However, that argument simply does not hold water.  Surely trained and competent police officers know it does not take 57 rounds of gunfire to eliminate the threat of one man who had fired a single shot at the police and was laying on the ground with no way of escape.  Despite having fired a shot at the officers, given the way he was boxed in and the number of officers and the weapons arrayed against him, Mr. Cliatt was not in a position to do real harm to all five officers.  The amount of force (57 rounds!) used against Mr. Cliatt is the very definition of the "brutal, gratuitous use of force against a visibly disabled suspect."  Defendant Wells' position is even more troubling.  He argues that since his gun jammed after he initially fired at Mr. Cliatt, he should not be held liable because he supposedly was never able to accomplish what he set out to do (i.e., kill Mr. Cliatt).  Defendant Wells participated in the totality of the circumstances that led to Mr. Cliatt's death.  He should not be allowed to shield himself from liability even if he was not able to ultimately be the particular shooter whose bullet(s) physically ended Mr. Cliatt's life.

### IV.

### DEFENDANTS' STATUTE OF LIMITATIONS ARGUMENT AND DEFENDANT WELLS' QUALIFIED IMMUNITY ARGUMENTS ARE MADE IN BAD FAITH, ARE FRIVOLOUS AND SHOULD BE SANCTIONED

Defendants' attempts to reintroduce the statute of limitations argument are inappropriate at best.  The Court already formally considered and rejected that argument when Defendants

previously moved to have Plaintiff's case dismissed. Defendants' attempt to resurrect this already rejected argument is frivolous and improper, can only have been made in bad faith, and should be sanctioned. The same is true of Defendant Wells' qualified immunity argument, since he already (and recently) made and lost that argument before the Court. The burden of Defendants' stubborn insistence on wasting the Court's and Plaintiff's time and resources by repeating and rehashing these arguments should fall squarely on them.

A court may assess attorney's fees when a party has " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258-259 (1975)(quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129 (1974)). See also *Hall v. Cole,* 412 U.S. 1, 5 (1973); *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, n. 4 (1968) *(per curiam).* In this regard, if a court finds that a party "shows bad faith by delaying or disrupting the litigation" the court has the inherent authority to sanction that party. See *Hutto,* 437 U.S., at 689, n. 14. The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy." *Id.*

## V.

### DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT

Even if the Court determines that Plaintiff is not entitled to summary judgment, Defendants cannot meet their burden of obtaining summary judgment. At a minimum, the record evidences genuine issues of material fact as to whether Defendants violated Mr. Cliatt's constitutional and civil rights by using excessive force that resulted in his death. Importantly,

these questions of fact do not arise from evidence originating from Plaintiff. Rather, this evidence comes from Captain Hart's report, which is the result of the official police investigation into the circumstances surrounding Mr. Cliatt's death.

After completing his investigation, **Captain Hart concluded that there were issues of concern relative to how the police officers handled the incident that led to the shooting death of Mr. Cliatt.** See Exhibit 5 to Plaintiff's Summary Judgment Brief. **Further, Captain Hart specifically concluded that the manner in which the police handled the incident may have <u>provoked</u> Mr. Cliatt into firing at the officers.** See Exhibit 5 to Plaintiff's Summary Judgment Brief, p. 15.[3]

As it relates to the events leading up to Mr. Cliatt's actions, Captain Hart's report provides the following observations:

> I do have some concern about the lack of planning/coordination by the officers on the scene prior to approaching the suspect(s). **Statements by the five involved officers are consistent on the fact that upon their arrival, <u>the suspect(s) presented no immediate threat</u>, <u>both being seated in the Saturn</u> and <u>no firearm yet presented</u>**. Lt. Daughtry stated that he attempted to lay out a plan of action, but that **<u>various officers/deputies approached the Saturn almost immediately upon arrival with no coordination</u>**. This **<u>rash</u>** approach may have **dictated the subsequent actions of the offender (Cliatt)**. It should be noted that this agency is semi-paramilitary in structure/organization and respect of/to supervisors is necessary to forward the mission of this agency in a competent manner.
>
> **I also have some concern about the actual approach of the Saturn made by the officers.** During the course of the interviews, the officers stated that they were conducting a felony take-down, however, their definitions of what a felony take-down consisted of varied.

Exhibit 5 to Plaintiff's Summary Judgment Brief, p. 15 (emphasis added).

---

[3] This conclusion was also shared by the Phenix City Chief of Police, who commented over the police radio immediately after Mr. Cliatt was killed that he had concerns over the way the police handled the incident. See Exhibit 10 to Plaintiff's Summary Judgment Brief, Transcript of Police Communications.

Officer Hart's report also notes that curious fact that although there were three police vehicles equipped with video cameras at the scene of Mr. Cliatt's shooting, none of these video cameras was turned on during the incident.  See Exhibit 5 to Plaintiff's Summary Judgment Brief, p. 15.  Officer Hart ended his report by recommending refresher training for all officers on felony/high risk take-downs and arrests.  Exhibit 5 to Plaintiff's Summary Judgment Brief, p. 16.  He also recommended refresher training regarding understanding the chain of command, supervisor responsibility and respect of subordinates to supervisors relative to coordinating and executing responses to various police situations.  Exhibit 5 to Plaintiff's Summary Judgment Brief , p. 16.

The burden of proof is reversed on Defendants' request for summary judgment in their favor.  When considering their request in this regard, the Court must view the evidence in the light most favorable to Plaintiff.  See *Greason v. Kemp*, 891 F.2d 829, 831 (11th Cir. 1990).  More importantly, "the court should give credence to the evidence favoring the non-movant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id*. (quoting 9 A C. Wright & A. Miller, Federal Practice and Procedure, Section 2529, p. 299).

In the case at bar, Plaintiff goes one better than required by the *Greason* case in that the evidence Plaintiff has presented does not even come from a disinterested witness.  It comes from a witness (Captain Hart) who has an interest in seeing Defendants win this case!  Given Captain Hart's factual determinations, it would be wholly inappropriate and legal error for the Court to grant Defendants summary judgment and rule as a matter of law that Plaintiff could not prevail against Defendants at a trial of this matter.

**VI.**

**CONCLUSION**

For all of these reasons, Plaintiff respectfully requests that the Court grant her request for summary judgment and deny Defendants their request for summary judgment.

**/s/ Fulton B. Eaglin**
Fulton B. Eaglin (P24834)
Attorney for Plaintiff
2610 E. Arbor Road, Suite 100
Ann Arbor, MI  48103
(734) 665-5355; 0911fax
fbeaglin@aol.com
January 16, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to JOSHUA R. MC KOON, JAMES ROBERT MC KOON, JR., JAMES PAUL GRAHAM, JR., KENDRICK E. WEBB, and SCOTT WAYNE GOSNELL.

**Fulton B. Eaglin**
Fulton B. Eaglin (P24834)
Attorney for Plaintiff
2610 E. Arbor Road, Suite 100
Ann Arbor, MI  48103
(734) 665-5355; 0911fax
fbeaglin@aol.com
January 16, 2008